KINKAID, Respondent, v. ROSSA, Appellant.

(141 N. W. 969.)

1. **Execution—Sale—Inadequacy of Price—Relief in Equity.**

An action was brought in Union county, S. D., against plaintiff who was 72 years of age and had little education, upon a judgment recovered against him in Iowa, in which former suit the defendant in the present was attorney for, and was grantee of the lands in question by conveyances from such former plaintiff; and said former plaintiff, some ten days after commencement of the second action, orally promised the present plaintiff (who had informed him that he had taken counsel and that he would defend the action pending in Union county) that if he would not defend the latter action he, the plaintiff in the Iowa suit, would take judgment in the Union county suit for $100 less than the amount claimed, and would not issue execution for three years. The present plaintiff relied upon such promise, and did not learn of its violation until January 1, 1911, and the present action, to set aside the execution sale made under the judgment taken, in Union county, was commenced in March, 1911. The land sold under execution in the Union county suit was worth $15,000. and was sold at said sale for less than $300. **Held,** in view of all the circumstances, the sale would be set aside; the price being so inadequate as to shock the conscience.

2. **Vendor and Purchaser—Bona Fide Purchaser—Relief from Fraud.**

One who received land purchased at execution sale by a judgment creditor, substantially in consideration of legal services rendered for the judgment creditor in procuring a default judgment against the debtor, which was procured by the creditor, false representations which lulled such debtor into refraining from defending the action and which were made to enable the creditor to purchase the land at a grossly inadequate price at execution sale, was not a bona fide purchaser; and a court of equity will relieve from such sale.

3. **Frauds, Statute of—Promise on Representations—Preventing Defense to Action—Promise Relied on.**

It is immaterial that the promise of a plaintiff, made to a defendant, not to have execution issue on a judgment in the action if the defendant would make no defense, was void under the statute of frauds, where the defendant relied upon

such promise and was lulled into security thereby, and where the violation of such agreement was unconscionable.

**4. Laches—Unconscionable Execution Sale—Vacation of Sale.**

Where a default judgment was taken against plaintiff herein because he was induced not to defend by a false promise by defendant's grantor that execution would not issue, defendant, whose rights rest upon fraud and deceit, cannot urge laches in defense of an action by plaintiff to set aside the execution sale, defendant not being a bona fide purchaser of the land sold under the execution.

(Opinion filed May 20, 1913.)

Appeal from Circuit Court, Union County. Hon. JOSEPH W. JONES, Judge.

Action by William Kinkaid against J. O'Donovan Rossa, to set aside an execution sale of realty. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*W. E. and C. E. Gantt*, for Appellant.

Plaintiff's only excuse for neglecting the matter is that he had an agreement with John Schwinn, the judgment creditor, that no execution was to be issued for three years.

The question of laches does not depend upon the fact that a certain definite time had elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute the proceedings before he did. Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 253; Patterson v. Hewitt, (N. M.) 66 Pac. 558, 562; 16 Cyc. 171; Norris v. Hagin, 28 Fed. 275; Champion v. Woods, 79 Cal. 17, 21 Pac. 534.

In Reply.

It is an axiom that the breach of a void contract is not a fraud of any nature.

*French & Orvis*, and *J. C. McConkey*, for Respondent.

A person guilty of fraudulent, unfair or unconscionable conduct in violating an agreement is not in position to say that the innocent party who relied and acted upon the agreement and who remained in possession of the land at all times after the issuance of the sheriff's deed, is equitably estopped from saying he believed the other party would honestly carry out the agreement.

The doctrine of laches will not permit a party to take advantage of his own wrong to defraud an innocent party. Warren v. Stinson, (N. D.) 70 N. W. 279; Paragraph 921 second Pomeroy; also Bohm v. Bohm, Colo. 100.

Laches implies more than mere lapse of time; it requires from plaintiff a fraudulent intent to not discover the facts and assert his rights (Willmot v. Barber, L. R. 15 ch. Div. 96, 105; Larzeleare v. Starkweather, 38 Mich. 96) ; also some prejudicial change in circumstances rendering it inequitable to grant relief. Hahn v. Gates, 102 Ill. App. 385; Sanborn v. Eads, 36 N. W. (Minn.) 338; Fitzgerald v. Fitzgerald, 62 N. W. (Neb.) 899; O'Brien v. Wheelock, 184 U. S. 450.

Ignorance of the fact that defendant was invading or disputing plaintiff's right to said property is the same in effect as ignorance of the right itself, and therefore laches cannot be imputed to this plaintiff. In such cases a remedy is given even if barred by statute. Anthony v. Campbell, 112 (Fed.) 212; Lurton v. Rodgers, 29 N. E. (Ill.) 366; Right v. Leclaire, 3 (Iowa) 221; Chase v. Brighton, 54 N. W. (Mich.) 44; Wahl v. Meilke, 94 N. W. (Minn.) 688; Plat v. Plat, 58 N. Y. 646.

The acquiescence of defendant all these years in this plaintiff retaining said premises and collecting the rents thereof with full knowledge on the part of defendant, is an assent on his part and shows no laches on plaintiff's part. Citizens Bank v. Stewart, 57 N. W. (Iowa) 957; Fawcett v. Fawcett, 55 N. W. (Wis.) 405; Duke v. Leeds, 2 Phillips Chancery, 117.

GATES, J. In this case the title to certain land is involved which was formerly a part of the state of Nebraska, but which, by reason of the vagaries of the Missouri river, now lies in South Dakota. The case was tried by the court without a jury. Judgment was rendered in favor of the plaintiff, vacating and setting aside an execution, a sale, a confirmation of sale, and a sheriff's deed issued thereunder. From the judgment and order denying a new trial defendant appeals.

The trial court found the facts to be as follows: That on or about the 8th day of December, 1904, one John Schwinn commenced an action against the plaintiff, William Kinkaid, and his wife, Alice Kinkaid, in the distrct court of the county of Wood-

bury and state of Iowa. That thereafter, and on the 10th day of March, 1905, such proceedngs were had in said action, that said John Schwinn obtained a judgment against this plaintiff, William Kinkaid, and his said wife in said court for the sum of $219.58, besides costs, amounting in all to $232.92. That in said action J. O'Donovan Rossa was the attorney of record for the said John Schwinn, he being the same party as is defendant in this case. That thereafter, and on the 7th day of August, 1906, said John Schwinn commenced an action against this plaintiff, William Kinkaid, on said judgment in the circuit court of Union county, state of South Dakota, by personal service of a summons and complaint upon said William Kinkaid in Union county, S. D., and on the 7th day of August, 1906, a warrant of attachment in said action was issued out of the office of the clerk of the circuit court of Union county, state of South Dakota, directed to the sheriff of said county, whereby he was commanded and required to attach and safely keep all the property of said William Kinkaid within said Union county, and within the territory attached thereto for judicial purposes, not exempt from execution, or so much thereof as might be sufficient to satisfy the plaintiff's demand, to-wit, $232.92, with costs and expenses, as security for the satisfaction of such judgment as the plaintiff might recover in said action. That on the 7th day of August, 1906, the sheriff of said Union county, under and by virtue of said warrant of attachment, levied upon the following described real property of the defendant William Kinkaid, to-wit. Lots 1 and 2 of section 3, in township 29, range 8 east, and lots 3, 5, 6, 7, 8, and 9 in section 34 in township 30 of said range 8 east, lying and being in the state of South Dakota, and lying between the southern boundary of said state and the southern boundary of said county of Union, and being situate in the territory attached to said county of Union for judicial purposes. That within a week or 10 days after the service of said summons and complaint upon said William Kinkaid in said action, and after the levy by the sheriff of said Union county under said warrant of attachment on said land, said William Kinkaid went to a reputable practicing attorney of Sioux City in the state of Iowa, named Burton, one Joy being a partner of Burton, and consulted him in reference to said action and the service of said papers, said consultation being on or about August 14, 1906, and at said time

stated to him the facts in relation to said suit begun by John Schwinn against this plaintiff in Sioux City, as well as the one that was then pending in the circuit court in and for said Union county, state of South Dakota. That the plaintiff fully stated to said attorney the facts in said action so brought against this plaintiff in Woodbury county, and also in regard to said suit in said Union county, S. D., and after such statement so as above stated made, said attorney advised this plaintiff that the judgment obtained against this plaintiff in Woodbury county, Iowa, by said John Schwinn, was voidable, and that if this defendant desired to avail himself of such defense in the action begun in Union county, then let him appear in said cause in said Union county, S. D., and defend therein; said attorney then and there further advised this plaintiff that so long as plaintiff was in possession of said land so as above stated levied upon, said premises could not be sold under execution until further and other papers were served upon this plaintiff by the sheriff of Union county, S. D. That plaintiff did not at that time direct any answer to be put in in said matter, but told said attorney he would call again and have said attorney appear and look after said case in said Union county, S. D. That some 10 days after the service of said summons and complaint in said cause was served upon plaintiff in the action brought in Union county, S. D., plaintiff again went to Sioux City intending to employ said attorney above referred to, to look after said cause of action brought by said John Schwinn against this plaintiff in said Union county, S. D., and while this plaintiff was on his way to said attorney's office with one Boss, plaintiff met said John Schwinn at the corner of Fourth and Pearl streets in Sioux City, Iowa, and then and there stated to John Schwinn that plaintiff had consulted an attorney in relation to the suit that he, said John Schwinn, had just begun against this plaintiff in Union county, S. D., and this plaintiff further stated to the said John Schwinn that he intended to contest said action in Union county, S. D.: thereupon the said John Schwinn proposed to this plaintiff that if this plaintiff would not contest said cause, and would allow said Schwinn to take judgment for the amount claimed in said complaint, less $100, which plaintiff Kinkaid at that time claimed said John Schwinn owed this plaintiff, then said John Schwinn would not issue an execution on said judgment for three years from and

after the rendition of such judgment. That this plaintiff, Kinkaid, accepted said verbal proposition of settlement so as above stated made by said John Schwinn, and relying upon said agreement so as above stated made between himself and the said John Schwinn, did not go to see his attorney or make any appearance or defense in said action then pending in said Union county, S. D. Said agreement was made and entered into by and between said plaintiff and defendant on or about the 17th day of August, 1906, in Sioux City, Iowa. That after the service of said summons and complaint, and after the levy by the sheriff of said Union county under said warrant of attachment upon said land, and on the 8th day of September, 1906, a judgment in said action was rendered by the circuit court of said Union county in favor of the said John Schwinn and against the said William Kinkaid, for the sum of $271.35, including costs; that being the whole amount of the claim of the said John Schwinn against Kinkaid and the whole amount for which he brought said action. That said John Schwinn did not keep his said agreement so as above stated made with the said William Kinkaid, but took a judgment as above stated for the full amount of his claim, without deducting the $100 which he had agreed to take out of the said claim. That said judgment contained the following language: "This action having been commenced by the personal service of the summons and complaint herein upon the defendant, and more than 30 days having elapsed since such service, and no answer, demurrer, notice of appearance, or other pleading having been served upon, or received by, plaintiff's attorney as required by said summons, and no appearance in any manner having been made by the defendant, * * * now, therefore, on motion of H. M. Wallace, attorney for the plaintiff, it is by the court ordered and adjudged that the plaintiff, John Schwinn, have and recover of the defendant, William Kinkaid the sum of $253.75, besides the sum of $17.50 costs and disbursements in this action, making on the whole the sum of $271.35, and that plaintiff have execution generally against the property of said defendant, and special execution thereof against the property of said defendant attached and levied upon under and by virtue of warrant of attachment herein." That thereafter, and on the 10th day of September, 1906, such proceedings were had in said action that a special execution was issued by the clerk of the circuit court

of the said Union county, directed to the sheriff of said county upon said judgment, whereby said sheriff was commanded to satisfy said judgment out of certain real property described therein, being the same real property levied upon under said warrant of attachment in said action. That thereafter, and on the 15th day of October, 1906, in pursuance of said execution and a notice of sale thereunder, and the due publication thereof, said sheriff sold to said John Schwinn all said real estate for the sum of $295.36, being the amount then due under the judgment so rendered by the circuit court of said Union county with costs of sale. That thereafter, and on the 31st day of October, 1906, the sheriff of said county made a report of said sale to the circuit court of said county, and the same was by said court confirmed. That thereafter, and on the 18th day of October, 1907, the sheriff of said Union county executed a sheriff's deed of all real estate to said John Schwinn, which deed was duly filed for record and recorded in Book 31 of Deed Records of Union county, on pages 283, 284. and 285, on the 31st day of October, 1907. That on the 30th day of October, 1907, John Schwinn conveyed a one-half interest in said property by warranty deed to the defendant, Rossa, said deed being recorded in Book 30 of Deed Records of Union county, on page 299, on the 31st day of October, 1907, the only consideration for this deed being the services of the said J. O'Donovan Rossa in obtaining the default judgment above referred to as having been rendered in favor of Schwinn and against Kinkaid in Woodbury county, state of Iowa, and was a part of what said J. O'Donavan Rossa in his testimony called the land deal in South Dakota, which land deal consisted of Schwinn giving him a half interest in this land for his professional services, which consisted of taking the judgment above referred to as having been taken against William Kinkaid in Woodbury county, Iowa, and further stated that there was a verbal agreement between John Schwinn and himself that he should have a one-half interest in that land. That on the 30th day of September, 1908, the said John Schwinn conveyed the remaining one-half interest in said property to Laura Schwinn by warranty deed, which deed was recorded in Book 30 of Deed Records in Union county, on page 614, on the 10th day of December, 1909, without any good or valuable consideration being paid therefor by the said Laura Schwinn, who was the wife of the said John

Schwinn at the time of the making of said deed. That on the 6th
day of November, 1909, the said Laura Schwinn conveyed by war-
anty deed her half interest in said property to the defendant J.
O'Donovan Rossa, which deed was recorded in Book 30 of Deed
Records of Union county, on page 615, said deed being recorded
on the 10th day of December, 1909, and the only consideration
therefor being the sum of $150 to $200. That the said John
Schwinn, in violation of his said agreement that he would not is-
sue execution on said judgment until three years after the date of
taking the same, took out execution upon the same and sold said
property as hereinbefore stated. That notwithstanding the making
and recording of all the deeds above referred to by the said
Schwinn and the said J. O'Donovan Rossa, the defendant herein,
the said William Kinkaid, occupied, used, cultivated, and leased to
other parties all of the lands in said deeds, and in said attachment
described the same in all respects as though he were the full, true,
and sole owner of the same. That the said plaintiff, William
Kinkaid, relied upon said agreements so as above stated, made
with the said John Schwinn, and had no knowledge of the issue
of said execution or sale of said property, or of the giving of any
of the deeds hereinbefore referred to, until on or about the 1st of
January, 1911. That this action was begun by service of sum-
mons and complaint upon the defendant, J. O'Donovan Rossa, on
or about the 23d day of March, 1911. That at the time of the
commencement of said action in the district court of Woodbury
county, state of Iowa, hereinbefore referred to, said William Kin-
kaid with his family resided in Sioux City, Woodbury county,
state of Iowa,, and was engaged in farming said land in Union
county, S. D., so levied upon and sold as hereinbefore alleged,
and has ever since, and up to the time of this action, resided in
said Sioux City and farmed said lands, either himself, or rented the
same, or both. That said real property so levied upon under said
warrant of attachment and execution and sold as hereinbefore
alleged consists of 289.80 acres, and that the value of the same at
the date of said levy, sale, and execution was $15,000. That at all
times since the levy of said warrant of attachment upon said
land, the plaintiff herein, William Kinkaid, has been, and was up to
the time of the commencement of this action, in full, complete,
and absolute possession and control of all said land and every part

thereof, and his possession had been in no manner interfered with on the part of said John Schwinn or the said J. O'Donovan Rossa until on or about the time of the commencement of this action. That the plaintiff at the time of the commencement of this action was about 77 years of age, and a man of but little education. That at the time when said warrant of attachment was levied upon said real estate above described, this plaintiff William Kinkaid had personal property on said land subject to execution and free from incumbrance, except a chattel mortgage of $100, to the amount of about $2,000. That plaintiff has deposited in the hands of the clerk of courts of Union county, S. D., for the defendant, the sum of $371.10, being principal of said judgment, and interest thereon up to the date of deposit, to be paid to said defendant upon his discharging the judgment rendered against this plaintiff in Union county, S. D., or upon his giving to this defendant a quitclaim deed for all his interest in said land. That during all the times hereinbefore referred to the said defendant, J. O'Donovan Rossa, was interested in the matter of said judgments, and after the time for redemption had expired, one Lockey, who had applied to William Kinkaid, the plaintiff, for a lease of a portion of the lands in the complaint described, heard that John Schwinn had a judgment against William Kinkaid, and went to see the said John Schwinn in regard to the same for the reason that he feared he might have trouble in getting his crop. That the said John Schwinn gave to the said Lockey a note and told him to take the same to J. Donovan Rossa, which he did. That the said J. O'Donovan Rossa, after having read said note, told him to go ahead and lease the property of the said Kinkaid and pay him the rent, which the said Lockey did. That the said defendant, J. O'Donovan Rossa, knew during all said times that the plaintiff, William Kinkaid, was occupying, using, farming, and leasing the whole of said lands the same in all respects as before the entry of said judgment in said Union county and the sale under execution, issued under and by virtue of said judgment referred to, but made no effort or took no steps to oust the said William Kinkaid, or in any manner to interfere with his possession, occupancy, and use of said premises, until some time the last part of November or December, 1910, when he, said J. O'Donovan Rossa, leased a portion of said premises to one Grimes and one Teller, neither of whom, however, took possession,

or attempted to take possession, of said lands until on or about the time of the commencement of this action.

At the outset we may state that the findings are within the issues raised by the pleadings, and are sustained by the evidence, and that there was no prejudicial error in the rulings of the court in regard to the admission or exclusion of testimony. The principal contentions of appellant are thus summed up in his reply brief: "(1) Had the plaintiff a right to rely on this three year's agreement claimed to have been made with Schwinn, even though he was chargeable with knowledge, as a matter of law, that said agreement was not only unenforceable, but absolutely void, under the statute of frauds and for lack of a consideration? and (2) was the plaintiff's laches excusable, although extending over a period of about four years and four months, for the reason that he had a right to rely on such agreement? and (3) was plaintiff's laches excusable, in that he made no inquiries and absolutely neglected to look after his interests for a period of over a year and four months after this alleged contract had expired without a showing of any excuse whatsoever?"

We must answer the first question in the affirmative, and as to the second and third questions the trial court has found, in effect, that the plaintiff was not guilty of laches.

[1, 2] In this case land of the value of $15,000 was sold at a judicial sale for less than $300. We are of the opinion that the proceedings culminating in the sheriff's deed were properly set aside because the inadequacy of the price was so great as to shock the conscience, and because of the other circumstances, shown in the findings, which induced the plaintiff in this case to refrain from defending the action at law in Union county. At that time respondent was 72 years of age and a man with little education. Schwinn promised him that if he did not defend that action he (Schwinn) would take judgment for $100 less than the amount claimed, and that he would not issue an execution on said judgment for three years. Respondent relied upon such promise and did not become aware of its violation until about the 1st of January, 1911. This action was brought in March, 1911. During all that period respondent had remained in the undisturbed possession of the land. At the time of sale the land was worth in excess

of 50 times the amount of the sale. Appellant is not a bona fide purchaser.

In the case of Kirby v. Ramsey, 9 S. D. 197, 68 N. W. 328, this court said: "It is true that inadequacy of price will not alone warrant the setting aside of sheriff's sale (citing Bank v. Fair Association, 2 S. D. 145 [48 N. W. 852]), but other circumstances may exist which, in connection with inadequacy of price, entirely justify a court of equity in preventing what would otherwise result in an unjust oppression of the judgment debtor. Each case must depend upon its own peculiar facts." In that case and in the case therein cited, the question of gross inadequacy of price as a ground for setting aside a sale was not discussed.

In the case of Stacy v. Smith, 9 S. D. 137, 68 N. W. 198, this court said: "The inadequacy of the price bid, and for which the property was sold by Smith, is so great that no court of equity would permit the sale to stand. The fact that property of the value of $600 was sold for $10.60 clearly shows either mistake or fraud and we apprehend no court of equity would refuse to relieve the party from such sale."

In Graffam v. Burgess, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. Ed. 839, the rule as laid down in 24 Cyc. page 39, is substantially set forth as follows: "The rule has become almost universal that a sale will not be set aside for inadequacy of price unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness."

In the case of Warren v. Stinson, 6 N. D. 293, 70 N. W. 279, the court said: "That very slight circumstances justify the setting aside of an execution sale for inadequacy of price, in cases where no question of an innocent purchaser is involved, is well settled."

In the case of Ballentyne v. Smith, 205 U. S. 285, 27 Sup. Ct. 527, 51 L. Ed. 803, a sale was set aside prior to confirmation solely because of the gross inadequacy of the price, where the amount of sale was one-seventh of the real value.

In the case of Roger v. Whitham, 56 Wash. 190, 105 Pac. 628, 134 Am. St. Rep. 1105, 21 Ann. Cas. 272, the court said: "While it is a primary rule that mere inadequacy of price, unless so gross as to shock the conscience, is not enough to set aside a judicial sale, it is also true that when there is a great inadequacy,

slight circumstances indicating unfairness will be sufficient to justify a decree setting the sale aside.

In the case of Mangold v. Bacon, 237 Mo. 496, 141 S. W. 650, the value of the property was $1,200; the amount of the sale was $12.50. There the court said: "We think the conservative and better doctrine is that a court of equity, acting with caution and in an aggravated case, and when no aid from other equitable consideration is at hand, may set aside a sheriff's deed on the sole ground of a consideration so grossly inadequate as to shock the conscience."

It would take a long search to find a more aggravated case than the one at bar.

[3] It is immaterial whether the alleged promise on the part of Schwinn was void because within the statute of frauds. Respondent relied upon it. He was lulled by Schwinn into a sense of security. The violation of the agreement by Schwinn was unconscionable.

In the case of Fairy v. Kennedy, 68 S. C. 250, 47 S. E. 138, the question of a like agreement being within the statute of frauds was considered. The court said: "The owners of the property were lulled into allowing the property to be bought for much less than its value by the promise or representation of the purchasers that they should have a chance to redeem it. To have their bargain the purchasers must carry out the promise or representation which they made, and it is of no consequence that the promise or representation did not amount to a legal contract. Having escaped from the promise under the statute of frauds, and because the promise was not sufficiently definite for legal enforcement, they cannot hold the bargain obtained by the promise, for that would be a fraud."

[4] Under the findings of the court the doctrine of laches is not applicable in this case. While judged by average standards respondent might be considered guilty of laches, we will not in this particular case scan too closely the evidence for the purpose of overturning the findings of the trial court on this subject. Appellant's rights in this case rest upon fraud and deceit. He is in no position to urge the consideration of the question of laches upon this court. If he was a bona fide purchaser, an entirely different situation would be presented. The claims of respondent

appeal strongly to equity.  The reverse is true of the claims of appellant.  We will not disturb the findings on the question of laches for the purpose of allowing appellant to reap the benefits of fraud.

The judgment and order denying a new trial are affirmed.