Joe **ASSMAN, d/b/a Assman Implement Company, Plaintiff and Appellee,**

v.

**J.I. CASE CREDIT CORPORATION, Defendant and Appellant.**

**No. 15468.**

Supreme Court of South Dakota.

Considered on Briefs March 24, 1987.

Decided Sept. 2, 1987.

Rehearing Denied Sept. 29, 1987.

John J. Simpson, Winner, for plaintiff and appellee.

J.M. Grossenburg of Day & Grossenburg, Winner, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Plaintiff-appellee, Joe Assman, doing business as Assman Implement Company (Assman), brought suit to recover monies debited from his dealer's reserve account by defendant-appellant, J.I. Case Credit Corporation (Case Credit). The circuit court ruled in favor of Assman. Case Credit raises two main issues on appeal.

(1) Assman should have been held liable for attorney's fees expended by Case Credit in repossessing collateral.

(2) Assman was not entitled to profits realized upon a subsequent sale of the collateral to third parties.

We reverse and remand.

## FACTS

Assman operates a retail establishment in Mission, South Dakota. He sells farm machinery and acts as a dealer for J.I. Case Corporation (Case). Assman and Case Credit, a wholly owned subsidiary of Case, entered into a "Retail Financing Agreement" on November 1, 1973. Assman sold

three new Case tractors to Otto Huber & Sons, Inc., (Hubers) on March 14, 1975. This sale was subject to a "Retail Installment Contract (Security Agreement)," which Assman later assigned to Case Credit.

Subsequently, Farmers State Bank, of Kilgore, Nebraska, commenced foreclosure proceedings against Hubers. Case Credit was named as a party defendant. On July 22, 1977, Case Credit obtained a judgment against Hubers for $109,758.35. This amount represented Hubers' outstanding balance on (1) the three Case tractors sold by Assman; (2) one Case 1370 tractor; (3) one Case 1070 tractor; (4) one 990 David Brown tractor; and (5) one Case bottom plow. Hubers then filed for bankruptcy, which stayed collection of the judgment. As of April 1977, the amount Hubers owed on the three tractors was $78,221.87.[1]

Bankruptcy trustee, Robert Warder, and Case Credit agreed that the three tractors would be sold at a Bankruptcy Court auction sale on October 14 and 15, 1977. It was also decided that Case Credit's liens would be applied to the proceeds of the sale and sale expenses would be prorated. At the auction sale, which Assman attended, Case Credit purchased the three tractors for $76,000.[2]

To enforce the Huber security agreement, Case Credit expended $5,554.94 in legal fees. Case Credit, relying on the "Retail Financing Agreement," debited Assman's dealer reserve account, controlled by Case Credit,[3] to cover legal fees and the deficiency experienced by Case Credit when it purchased the three tractors at the auction sale.

Case Credit then sold the three tractors to Case Power and Equipment of Pierre, South Dakota, for $76,000.[4] Case Power proceeded to resell the tractors and realized a total net profit of $4,973.47.

Assman initiated action against Case Credit by service of a Complaint, filed February 14, 1980. An Amended Complaint was filed on May 27, 1981. Case Credit submitted a Motion for Judgment on the Pleadings which was denied, post Hearing held on May 27, 1981. A trial to the court was held before the Honorable Marvin S. Talbott, Todd County, South Dakota.

Assman was awarded a money judgment of $18,061.38. The circuit court ruled:

(1) Case Credit could not hold Assman liable for attorney's fees ($5,554.94).

(2) Assman was entitled to the profit experienced by Case Power when it resold the three tractors ($4,973.47), which amount would be reduced by the deficit Case Credit suffered when it purchased the tractors at the auction sale ($2,221.87) to equal $2,751.60.

(3) Assman was also entitled to interest on the total ($8,306.54) of (1) ($5,554.94) and (2) ($2,751.60). Pursuant to SDCL §§ 54-3-5 and 54-3-16, interest on $8,306.54 was computed and $9,754.84 in interest was added to the judgment for a total judgment as of July 9, 1986, of $18,061.38.

Case Credit appeals.

## DECISION

### I.

Case Credit advocates that it should have been permitted to recover attorney's

1. Assman testified that all of the farm machinery listed above, including the three tractors in (1), were sold by him and financed through him and Case Credit.

2. In his brief, Assman advocates that Case Credit actually paid $78,000 for the tractors at the auction sale. The trial court's Finding of Fact 9 recites that Case Credit purchased the collateral for $76,000. While Assman requests no specific action from this Court regarding this alleged numerical discrepancy, we observe that Assman failed to file notice of review pursuant to SDCL 15-26A-22. His failure to so act precludes our

consideration of the question. *State v. Holland,* 346 N.W.2d 302, 306 (S.D.1984) (citing *In re Northwestern Bell Tel. Co.,* 326 N.W.2d 100, 104 (S.D.1982)).

3. Evidently, Case retains approximately 1% of a dealer's commission on each sale in a reserve account. This account then may be drawn on by Case in situations such as this.

4. Case Power is an assumed or fictitious name used by Case to identify company-owned retail sales and service stores.

fees, incurred during the Huber litigation, from Assman. Case Credit makes specific reference to the language of the "Retail Financing Agreement" which, in pertinent part, states: "Dealer's Reserve Account will be debited with any net loss which [Case Credit] may sustain on any Security Instrument accepted ... resulting from repossessing machines or equipment which secure a Security Instrument ... *including ... legal expenses....*" Retail Financing Agreement § 4(e) (emphasis added). We agree with Case Credit and reverse the circuit court's decision denying recovery of attorney's fees.

■■■ Section 4(e) of the Retail Financing Agreement, executed by the parties in this case, is not a provision contained in "other evidence of debt" which is prohibited by SDCL 15–17–10.[5] Assman's contention, that the Agreement (and Section 4(e) in particular) was a guaranty, is also faulty. By its own language, this Agreement was designed "to set forth the conditions under which Security Instruments will be accepted by [Case Credit] from Dealer, and to establish the rights, liabilities and obligations of each of the parties hereto with respect to such Security Instruments[.]" It is more than a mere guarantee. Therefore, previous cases which hold that "[l]anguage in a guaranty permitting recovery of attorneys' fees is against public policy and void as the clear dictate of SDCL 15–17–10 demands" have no present applicability. *International Multifoods Corp. v. Mardian,* 379 N.W.2d 840, 845 (S.D.1985) (citing *Midcontinent Broadcasting Co. v. AVA Corp.,* 329 N.W.2d 378, 381 (S.D.1983)). *See also Lowe v. Steele Constr. Co.,* 368 N.W.2d 610 (S.D.1985).

■■■ However, parties may generally contract for payment of attorney's fees. *NBC Leasing Co. v. Stilwell,* 334 N.W.2d 496, 501 (S.D.1983); 25 C.J.S. *Damages* § 50 (1966). *See DuPratt v. Black Hills Land & Abstract Co.,* 81 S.D. 637, 140 N.W.2d 386 (1966); *Dodds v. Bickle,* 77

S.D. 54, 85 N.W.2d 284 (1957). In *NBC Leasing Co.,* we observed:

> At common law the right to recover attorney's fees from an opponent in litigation did not exist. In the absence of a statute or rule of court *or some agreement expressly authorizing taxing of attorney's fees* in addition to ordinary statutory costs, such an item of expense is not allowable.

334 N.W.2d at 500–01 (emphasis in original) (quoting *Tracy v. T & B Constr. Co.,* 85 S.D. 337, 340, 182 N.W.2d 320, 322 (1970)).

In this case, the parties contracted for payment of attorney's fees as is evidenced by Section 4(e) of the Agreement. Assman and an authorized representative of Case Credit affixed their signatures to this document. Assman proffers no reason why the Agreement should not be enforced. Therefore, the circuit court erred, as a matter of law, when it determined Case Credit was not entitled to attorney's fees. We reverse that portion of the circuit court's decision.

## II.

Case Credit contends that the circuit court erred when it (1) did not accept the price received at the bankruptcy auction sale as the fair value of the equipment; and (2) treated Case Credit and Case Power and Equipment as a single entity therefore ignoring the sale from Case Credit to Case Power and basing the fair value of the equipment on the price received by Case Power upon its sale of the three tractors to third parties. We are persuaded by Case Credit's arguments and also reverse the circuit court on this issue.

■■■ The circuit court specifically found that (1) Case Credit purchased the three tractors at the bankruptcy sale; (2) Assman had reasonable notice of the sale and in fact was in attendance; and (3) the bankruptcy sale was a public judicial sale within the meaning of SDCL 57A–9–504. Assman

---

5. SDCL 15–17–10 provides:

Any provision contained in any note, bond, mortgage, or other evidence of debt for the payment of any attorney fee in case of default in payment or of proceedings had to collect such note, bond, or evidence of debt or to foreclose such mortgage is hereby declared to be against public policy and void.

does not dispute the court's findings. Based upon these findings, we hold that the price Case Credit paid for the three tractors at the bankruptcy sale is presumptively reasonable and fair. On the general subject of sales, this Court, long ago, noted: " 'The rule has become almost universal that a sale will not be set aside for inadequacy of price unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness.' " *Kinkaid v. Rossa*, 31 S.D. 559, 569, 141 N.W. 969, 972 (1913) (quoting *Graffam v. Burgess*, 117 U.S. 180, 191–92, 6 S.Ct. 686, 692, 29 L.Ed. 839, 843 (1886)). *See Sierra Fin. Corp. v. Brooks-Farrer Co.*, 15 Cal.App.3d 698, 704–05, 93 Cal.Rptr. 422, 426 (1971); 47 Am.Jur.2d *Judicial Sales* § 196 (1969); Annot., 5 A.L.R.4th 794 (1981). This rule also has unquestioned application in the area of bankruptcy. *See* 8A C.J.S. *Bankruptcy* § 319c.(2) (1962).

Absent fraud or other impropriety in the sale, the amount bid or received when collateral is sold is generally used as the basis for determining the amount of surplus or deficiency. *Schabler v. Indianapolis Morris Plan Corp.*, 142 Ind.App. 319, 321–24, 234 N.E.2d 655, 657–58 (1968). While the circuit court did not directly question the sale, it did question the sale collaterally. Case Credit purchased the tractors at the sale for a price that is presumed fair and reasonable. The circuit court must not be permitted to trace subsequent resale of the tractors by Case Power to third parties to determine the sufficiency of a price paid at a bankruptcy sale. Using the circuit court's theory, if Case Power sold the three tractors to third parties, at a loss, Case Credit could look to Assman for the difference between the price paid at the bankruptcy sale and the price received from third parties at the later sale. Such a procedure would foster great uncertainty and result in juggling of surpluses and deficiencies long after the purchase of collateral at presumptively valid auction sales.

We further note that the close relationship between Case Credit and Case Power is of no importance in this case. Case Credit obtained the tractors at the bankruptcy sale. After that point in time, Case Credit could do with the collateral as it wished. Case Credit's sale of the tractors to Case Power and Case Power's subsequent sale to third parties is beyond our need to reach. Therefore, the circuit court's award of $4,973.47 (profit realized by Case Power upon its sale of collateral to third parties) is reversed.

In conclusion, since we have reversed the circuit court as to both issues, Assman is no longer entitled to a money judgment. Accordingly, this matter is remanded to the circuit court with instructions that a judgment, dismissing the case, be entered in favor of Case Credit.

All the Justices concur.