**In re H. Keith CEARLEY, Debtor.**

No. 5:02–BK–74951.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

July 29, 2003.

Carol Stream, IL, Becket & Lee, LLP, Malvern, PA, George E. Butler, Jr., Attorney at Law, Charles S. Trantham, Stockland & Trantham, Fayetteville, AR, for Creditors.

John T. Lee, Attorney at Law, Siloam Springs, AR, for Debtor.

## ORDER

RICHARD TAYLOR, Bankruptcy Judge.

H. Keith Cearley (hereinafter "the debtor"), filed an objection to the unsecured claim of the Bank of Arkansas (hereinafter "the Bank"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The parties submitted this matter solely on stipulations. The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

At the time of filing the petition, the Bank had a claim secured by real property. The real property in question was subsequently abandoned from the bank-

ruptcy estate and sold at a foreclosure sale. The Bank was the successful bidder at the foreclosure sale for $550,000.00, which was less than the full indebtedness. Accordingly, the Bank then filed an unsecured claim in the amount of $259,578.61 for the deficiency.

A few months later, the Bank sold the real property to a third party for $675,000.00. The debtor now seeks to have the $125,000.00 in excess proceeds credited to the amount of the deficiency claim, resulting in a diminished unsecured claim against the debtor.

At the hearing on this matter, respective counsel for both parties indicated this was a matter of first impression. For the reasons stated below, the Court overrules the debtor's objection.

■■■ Under Arkansas law, if the purchase price at foreclosure sale is less than the amount of the debt, the mortgagor may remain liable for the deficiency.[1] Absent fraud or other impropriety in the sale, Eighth Circuit courts have found the amount bid or received when collateral is sold is used as the basis for determining the amount of surplus or deficiency.[2] However, upon a finding of fraud or other impropriety, a Florida court found that the valuation should be based on the funds that were actually netted from the sale to a third party that occurred after the foreclosure sale.[3]

■ In the present case, no improper act has been alleged with regard to the foreclosure sale itself. Instead, the debtor asserts that the mere fact that the mortgagee purchased the property at the foreclosure sale means that the debtor should receive the benefit of a later sale to a third party where the Bank received more than its foreclosure bid. Courts in the Eighth Circuit have found this reasoning flawed, as does this Court. The *Fabel* court stated that a sale of the mortgaged property pays and extinguishes the mortgage debt to the amount of the purchase money, whether the premises are sold to a third party or bid in by the mortgagee.[4] The *Assman* court held that a court must not be permitted to trace subsequent resale of the property to third parties.[5] If subsequent sales receipts were traced and the property was later sold to a third party at a loss, the creditor could then look to the debtor for the difference in the price paid at the first sale and the price received at the later sale. The *Assman* court stated that "such a procedure would foster great uncertainty and result in juggling of surpluses and deficiencies long after the purchase of collateral at presumptively valid auction sales."[6]

■ It is here that this Court's inquiry ends. It would be inconsistent with general principles of property and foreclosure

---

1. *In re Gordon,* 161 B.R. 459 (Bankr.E.D.Ark. 1993). *See also* Ark.Code Ann. § 18–49–105 (1987).

2. *Assman v. J.I. Case Credit Corp.,* 411 N.W.2d 668 (S.D.1987). *See also State Bank of Young America v. Fabel,* 530 N.W.2d 858 (Minn.Ct.App.1995)(stating that a court calculates the deficiency based on the sale price at the real estate foreclosure and not the subsequent sale).

3. *In re Costello,* 184 B.R. 166 (Bankr.M.D.Fla.1995)(finding that in the light

of the totality of the circumstances surrounding the foreclosure, it was apparent the amount received at the foreclosure sale was totally unrealistic due to the fact that the debtor arranged for three persons to appear at the sale and make collusive bids without any intention to buy the property).

4. *Fabel,* 530 N.W.2d at 861.

5. *Assman,* 411 N.W.2d at 672.

6. *Id.*

law that the debtor should somehow be the beneficiary of a subsequent sale by the purchaser, be it the Bank or a third party. The debtor's rights are specifically set forth in the Arkansas statutes and persuasive case law. There is no support for the debtor's position that he should receive a credit for a better price at a subsequent sale. The debtor did not object to the sale bid by the Bank, and the Bank, once it was the owner by virtue of the commissioners deed, was free to sell the property at some later point in time without any obligation to account to the debtor for the sale proceeds.

This conclusion is best supported by the fact that surely the debtor would not take the same position if the opposite had occurred. In other words, had the Bank bid $550,000.00 for the property and then sold it for $500,000.00, the debtor would have strenuously objected to the Bank attempting to increase its deficiency judgment by $50,000. The debtor in that event would have been correct. The Bank simply would have taken the risk that it bid too much for the property.

Likewise, if the debtor believed the initial foreclosure bid was insufficient, then the debtor should have objected in the context of the state court foreclosure proceeding. If there is some other evidence or indicia of fraud with respect to the Bank's purchase and subsequent resale, then that can be addressed by the debtor in the appropriate forum.

For these reasons, the objection to the Bank's claim filed by the debtor herein is overruled.

IT IS SO ORDERED.