## In re CORSON'S ESTATE.
## KNIGHT v. AIKENS et al.

The finding of the jury, in answer to special interrogatories in a probate proceeding as to whether testator was mentally unsound, being only advisory, has only the effect of a finding of the court.

The court's finding on conflicting evidence should not be disturbed on appeal, unless clearly against the weight of the evidence.

To have testamentary capacity, testator need only have a full and intelligent knowledge of the nature of his act, of the property he possesses, and of the objects of his proposed bounty, and he may be so mentally diseased as not to be of sound mind, and yet have testamentary capacity.

Evidence held to sustain a finding that testator did not have sufficient testamentary capacity when he executed a codicil offered for probate.

The rulings on evidence in probate proceedings, which related only to the question of undue influence, became immaterial upon sustaining a finding based on different evidence that testator was mentally incompetent.

The jury made a finding of mental incapacity in response to a special interrogatory in a will contest, whereupon a party requested the court to make a contrary finding, which it refused and approved

the jury's finding.   **Held,** that the finding of mental incapacity was one made by the court.

(Opinion filed, April 2, 1912.   Rehearing denied June 29, 1912.)

Appeal from Circuit Court, Minnehaha County.  Hon. FRANK B. SMITH, Judge.

Probate proceedings by Grace Knight against Frank R. Aikens, executor, and others, in the matter of the will of William H. Corson. From a judgment probating the will and denying probate to a codicil, defendants appeal. Affirmed.

*H. E. Judge,* for appellants.  *Charles P. Bates* and *C. A. Christopherson,* for respondent.

McCOY, P. J.  In September, 1910, the will of William H. Corson, deceased, bearing date June 1, 1910, was admitted to probate in the county court of Minnehaha county, under and by the terms of which will respondent was bequeathed a legacy of $3,000 in cash. At the same time, a codicil, attached to said will, bearing date August 18, 1910, revoking the said legacy to respondent, was presented for probate. Respondent filed objections, contesting the admission to probate of said codicil, which objections were passed upon by the county court and disallowed, and the said codicil was thereupon also admitted to probate. Respondent then perfected an appeal to the circuit court, wherein the contest presented by the objections to the probate of said codicil was tried de novo before the court and a jury. The court submitted to the jury two interrogatories to be answered, to-wit: (1) Was William H. Corson of sound and disposing mind at the time of subscribing said codicil? (2) Was William H. Corson acting under undue influence at the time of subscribing said codicil? The jury answered, "No," to the first question, and "Yes," to the second. The verdict being advisory only, appellants presented to and requested the court to make findings in their favor, which proposed findings were refused, and to which refusal appellants duly excepted. The court thereupon adopted the findings of the jury and rendered judgment that said codicil was invalid, and that the judgment of the county court admitting said codicil to probate and dismissing the said contest be in all things reversed. Each and every one of the findings and conclu-

sions of law made by the court were duly excepted to by appellants. Appellants after having moved for a new trial, which was overruled and exception taken, bring the cause to this court on appeal.

[1, 2] It is contended by appellants that the evidence is insufficient to justify the said verdict of the jury and the findings of the court; and that the findings, conclusions of law, and judgment are against the law. Was the evidence sufficient to sustain the finding that William H. Corson was not of sound mind at the time of subscribing said codicil? The verdict of the jury, being advisory only, has no more force and effect than the finding of the court. Neither verdict nor finding should be disturbed when based on conflicting testimony, unless clearly against the weight of the evidence. We are of the opinion that the weight of the evidence is not opposed to the verdict or findings of the court upon the question of the soundness of the mind of the testator, Mr. Corson.

[3] It is essential that every person making a will or codicil should at the time be of sound mind. Section 998, Civ. Code. While every case must be considered in the light of its own peculiar surrounding facts and circumstances, still there are a great many well-considered decisions and rules to be followed in construing the facts and circumstances · as to whether or not the testator was of sound and disposing mind at the time of the execution of his will or codicil. It seems to be generally held: "The testator should be capable of comprehending the condition of his property and his relation to the persons who are or might have been the objects of his bounty. He should be able to collect in his mind without prompting the elements of his business to be transacted, and to hold them there until their relations to each other could be perceived, and a rational judgment in respect thereto be formed." Delafield v. Parish, 25 N. Y. 27; Van Guysling v. Van Kuren, 35 N. Y. 70; In re Downing's Will, 118 Wis. 581, 95 N. W. 876; Clark v. Fisher, 2 N. Y. Ch. L. Ed. 604; Harvey v. Sullens, 46 Mo. 377, 2 Am. Rep. 491; Merritt v. Johnson, 5 N. J. Law, 454; Campbell v. Campbell, 130 Ill. 466, 22

N. E. 620, 6 L. R. A. 167; Cassoday on Wills, § 438; Redfield on Wills, p. 91. In Campbell v. Campbell it is held that the impairment of the mind by age and disease need not amount to lunacy or absolute imbecility in order to make the will invalid. He is simply required to have a sound mind and disposing memory, and to have a full and intelligent knowledge of the act he is engaged in, of the property he possesses, and the disposition he desires to make of it, and the persons and objects he desires shall be the recipients of his bounty. Wilson v. Mitchell, 101 Pa. 495; Shaver v. McCarthy, 110 Pa. 339, 5 Atl. 614. A party may be so diseased mentally as not to be of sound mind, and yet may possess what the law terms "a disposing mind." Nothing more is required than that the party must be capable of acting rationally in the ordinary affairs of life, so that he may comprehend what disposition he may wish to make of his property, and be able to select the subjects of his bounty. Freeman v. Easly, 117 Ill. 317, 7 N. E. 656. If he knew and comprehended what he was about when he executed the instrument, he had sufficient testamentary capacity. Cassoday on Wills, §§ 436-447; Redfield on Wills, p. 91; Campbell v. Campbell, supra.

[4]  While it is true Mrs. Flora E. Jones, daughter of the testator, Henry T. Corson, his brother, and the subscribing witnesses, testify that in their opinion the testator was of sound and disposing mind at the time of the execution of said codicil, still the court and jury had before them facts and circumstances substantially as follows: The codicil was executed in the afternoon of the 18th day of August, 1910. Testator was at that time about 73 years of age, and for about 10 years then last past had been an invalid suffering from diabetes. On the 30th day of July, 1910, he fell and broke his right arm close to the shoulder, and thereafter the greater portion of the time was confined to his bed until he died on the 21st day of August, 1910. From the time of the breaking of the arm he was gradually growing weaker and weaker; no sudden or marked changes of physical or mental condition, but rapidly fading away to his final dissolution, which occurred three days after the execution of the codicil. For some

four or five days preceding the codicil, he had been in unconscious stupor, probably not amounting to a comatose condition, which stupor was the result of weakness and narcotics administered to alleviate pain and severe coughing. A greater portion of the 24 hours preceding the day on which this codicil was executed he had been in such unconscious stupor; the attending physician testifying that by speaking to him loud and sharp he could arouse him from the stupor and attract his attention for a short time. The brother, who it is shown had a bitter prejudice against respondent of many years' standing, testified that on the forenoon of the day of the codicil the testator had sent for him to come to his room, and that they talked about the improving of the hotel property jointly owned by them, about putting in hot and cold water in certain rooms, and making other suggested improvements; that after such conversation was concluded the brother said to testator, "Are your own private affairs fixed satisfactorily to you?" and he answered, "No, I want to revoke a certain portion of my will of $3,000 to Grace Knight, and I want to put in my insurance." An attorney was then sent for to draw the codicil, who came to the residence in the afternoon and was met by the brother and informed as to what the codicil should contain, and the same was all prepared ready for execution before going to the room of the testator to be signed. The attorney and the attending physician went to the room of testator, spoke to him on entering, and he answered. In the room at the time the attorney and physician entered were also the brother, Henry T. Corson, and Mrs. Jones, the daughter, who left the room as soon as the subject of the will was mentioned. The attorney said to testator: "I have prepared a codicil to your will. I will read it to you." The attorney read it, and then asked, "Is that the way you want it?" and testator answered, "Yes." Then the attorney said, "Do you wish us to sign it as witnesses?" and testator answered, "Yes." When it came to signing, testator first insisted that he could sign it without assistance, and said, "I can write." The doctor took his hand and guided it while the "mark" was made for his signature, with the testator's right hand. The testimony shows that he could not realize at first that he could not use his arm absolutely.

At this time testator was propped up in bed with pillows back of him.   The only remarks made by testator on the occasion of making the codicil was to answer, "Yes," to the questions propounded to him, and to say, "I can write," when he thought he could sign it himself.   It appears that at the time the will itself was drawn, on the 1st day of June, 1910, the attorney who drew the same stoutly urged the testator to leave out of the same the clause giving said legacy to respondent, the attorney urged that on account of the family bitterness concerning respondent that it would be better if testator would provide for respondent in some other equally if not better manner, and that respondent be not mentioned in the will; but this the testator absolutely refused to do.   It also appears that some two or three years prior to the codicil the testator had transferred his life insurance to respondent.   It also appears that respondent is the illegitimate daughter of testator, and a proper subject of his bounty, and that for many years he had cared for and supported her, and that there had been much friction between testator and his legitimate family concerning her.   From this state of facts the court or jury might very reasonably have inferred that the testator had not sufficient mental capacity to make the codicil without prompting.   From the fact that he stated to the brother a desire that his insurance be put into the codicil, it might reasonably be inferred that he was not of sufficient mind and memory to realize the condition of his property, and that it was an irrational desire to will to respondent what he had already some three years prior thereto transferred to her by other means; or it might have been inferred therefrom that no such conversation took place, on account of the unreasonableness thereof.   In the physical condition in which the testator appears to have been, with his arm broken and in splints, and which, if he was in his right mind, must have been known to him, it might have been considered irrational and an unsoundness of mind for him to try to sign the codicil without assistance, when he must have known, if in his right mind, that he could not.   The fact of his unconscious stupor, his being hard to arouse, and it being hard to attract his attention only for a short time, and the fact that he was propped up in bed, and the possibility of who

might have so propped him up and aroused him thereby, for a purpose and for the occasion, were all questions for the court and jury, whose province it was to determine the question of the soundness or unsoundness of testator's mind, from all of the evidence and all the surrounding facts and circumstances.

[5, 6] The codicil being invalid by reason of the testator being of unsound mind, it therefore becomes immaterial as to how the said codicil came about, whether by undue influence or otherwise. The rulings of the court on testimony affecting only the question of undue influence in the procurement of said codicil also become immaterial, as the finding on the question of unsoundness of mind depends wholly upon other evidence. The finding must be regarded as the finding of the court, especially after passing upon the proposed findings of appellants. The facts and circumstances upon which the finding of unsoundness of mind depend are practically undisputed; the only conflict arising being as to the conclusion to be drawn therefrom. It will therefore serve no useful purpose to further refer to the testimony concerning the question of undue influence. The record shows the estate of Mr. Corson was valued at about $50,000, all of which was bequeathed to his daughter, Mrs. Jones, except the $3,000 willed to respondent.

The judgment of the circuit court is affirmed.