## IN RE ESTATE OF MELCHER

VOIGHT et al., Appellants v. BAUER et al., Respondents

(232 N.W.2d 442)

(File No. 11476. Opinion filed August 22, 1975)

Chas. E. Gorsuch, Aberdeen, for appellants.

John L. Maynes, Maynes, Tonner & Maynes, Aberdeen, for respondents.

COLER, Justice.

This is a will contest. Contestants appeal the decision of the district county court admitting to probate the last will and testament of Hertha R. Melcher, dated February 2, 1973, and revoking an October 22, 1971 will. The 1973 will was challenged both on the grounds of incompetency of the testatrix and undue influence.

Hertha R. Melcher, childless and the widow of August A. (Gus) Melcher, died testate in Aberdeen, South Dakota, on the 10th day of September 1973, leaving real and personal property valued at approximately $40,000, located in Brown County, South Dakota. Contestants, Hattie H. Eisenbeis and Emma H. F. Voight, sisters-in-law of the deceased, would take a majority of the estate if the 1971 will was admitted to probate. Proponents, D. W. (Bill) Bauer and Walter Sieber, nephews of the deceased, and co-executors of the 1973 will, together with their sons, would take all of the estate under the 1973 will.

While our scope of review is governed by SDCL 15-6-52(a), *In re Estate of Hobelsberger*, 1970, 85 S.D. 282, 181 N.W.2d 455, we must also consider the jurisdiction of this court on appeal. The legislature by S.L.1971, Ch. 151, §5, amended the opening phrase of SDCL 30-35-1 to provide for direct appeal to this court from the district county court. The legislature did not, however, make any change in either SDCL 30-35-18 or 30-35-19, governing the jurisdiction of the appellate court on review. This court, being bound by long standing rule and custom, will not try a matter de novo as required by SDCL 30-35-19, but will apply the provisions of SDCL 30-35-18.*

We reverse and remand for retrial.

Every person over the age of eighteen years, and of sound mind, may execute a will for the purpose of disposing of his

---

* All of SDCL 30-35 has been repealed effective January 7, 1975, by S.L.1974, Ch. 153, § 60. The application of this statute to appeals brought thereafter need not be considered in this case since proceedings in probate or estate matters will, subsequent to January 7, 1975, be heard by the circuit courts whereby rules of civil procedure will in all cases apply. See SDCL §§ 15-26-26, 15-30-2.

estate. SDCL 29-2-3. We have held that for the purpose of making a will, one has a sound mind if able, without prompting, to comprehend the nature and extent of his property, the persons who are the natural objects of his bounty, and the disposition that he desires to make of such property. *In re Estate of Williams,* 1974, 88 S.D. 55, 215 N.W.2d 489; *In re Corson's Estate,* 1912, 29 S.D. 14, 135 N.W. 666.

█ It is well settled that it is the burden of the proponents of the will to establish the testatrix' testamentary capacity at the time of execution of the will. *Johnson v. Shaver,* 1919, 41 S.D. 585, 172 N.W. 676; *In re Estate of Williams, supra.* The attorney for the proponents, Joe L. Maynes, initially took the stand and as a witness to the will he had drawn, properly testified to uncontested matters of execution and attestation of the will. However, he further testified that the decedent "was of sound mind" and immediately thereafter the trial court fully examined him as to all matters leading up to the preparation and execution of the will tending to support competency of the testatrix. The proponents chose not to produce the other witness to the will, who resided at the time of the hearing in western South Dakota, apparently deeming it unnecessary as not required under SDCL 30-6-20. Counsel thereby made it incumbent upon himself to testify as to the matter of competency in addition to execution and attestation of the will. Having successfully resisted the motion of opposing counsel to have him removed from the case following his testimony as to competency, "[h]is evidence is not entitled to that credence to which it would have been entitled if he had preserved that neutrality that a high sense of professional propriety would have demanded." *Johnson v. Shaver,* 41 S.D. at 599, 172 N.W. at 680. Upon retrial counsel should take cognizance of SDCL 19-1-3 and the Code of Professional Responsibility, DR 5-101-B(2) and DR-5-102 as well as EC 5-9 and EC 5-10.

█ The only other evidence of the proponents, constituting their case in chief, was a certain deposition of the decedent's attending physician who was deposed only from recollection, without reference to hospital records, some ten months after the making of the will. While there was no finding of the trial court as required by SDCL 15-6-26(d)(3) which would have properly

permitted admission of that deposition, and there appears to be no grounds for its admission, its introduction was objected to only upon the basis of inadequate notice. We deem it unnecessary to answer the contention as to adequacy of notice in light of our disposition of this case, but the parties would be well advised to consider calling the physician at rehearing instead of depending on the deposition. Since he did not appear before the court, the testimony of the physician, by deposition, that Hertha was mentally competent, alert and responsive, is entitled to no presumption under the clearly erroneous rule of this court adopted pursuant to SDCL 15-6-52(a). This court is in as good a position to judge the credibility of a deposed witness as is the trial court. *Geo. A. Clark & Son, Inc. v. Nold,* 1971, 85 S.D. 468, 185 N.W.2d 677.

From the credible evidence in the hospital record, Hertha Melcher, at the age of 76, sought admission to the hospital on the 24th day of January 1973, and was admitted at 3:45 p.m. on that day. She complained of dizzy spells and constipation and her condition, according to the hospital record, was originally diagnosed as a hernia and high blood pressure. Hertha Melcher had suffered a hip fracture in earlier years and walked with the aid of a walker and sometime following her admission was also diagnosed as suffering from arteriosclerosis and degenerative arthritis. While the record is not explicit, her husband, Gus, was in that same hospital and placed in the intensive care unit as a heart patient. On the 25th day of January 1973 he died in that hospital. The testimony of the witnesses appearing before the court reveals that Hertha was distraught over the death of her husband, and was incapable of accepting his death, inquired as to his whereabouts and whether he was receiving adequate care and attention. She was also, on occasion, confused as to her surroundings, believing she was in her own home. The hospital records indicate further that she was dissatisfied with her care and treatment, some of which could be rationally explained by the fact that on February 1, the day before the execution of the will, while two nearby hospital attendants were momentarily unattentive, she fell from her walker onto the floor and thereby suffered a very painful compression fracture of her back for which bed rest and pain killers were prescribed. Her hospitaliza-

tion was extended because of that injury and it was not until February 28, 1973, that she was discharged to a nursing home for extended care.

■ The fact that the testatrix was aged, hospitalized, physically weak or frail at the time of the execution of the will are not in themselves evidence of testamentary incapacity. See *In re Estate of Hobelsberger, supra; Peterson v. Imbsen,* 1923, 46 S.D. 540, 194 N.W. 842; *In re Hackett's Estate,* 1914, 33 S.D. 208, 145 N.W. 437; *In re Corson's Estate, supra.*

■ The hospital records, while relevant and greatly revealing, were unexplained by either the attending physician who prescribed care and medication or the professional who either administered or failed to administer the tranquilizers and narcotics listed for the patient. No other qualified expert explained to the trier of fact the effect that such drugs would have on the patient if such were administered. The testimony of a daughter of one of the contestants, a registered nurse who had no connection with the hospital, attempted to shed light on the true meaning of these records, but failed to supply the trial court with the necessary expertise for a meaningful decision.

■ Absent a justified finding of competency the question of undue influence cannot arise. *Re Metz' Estate,* 1960, 78 S.D. 212, 100 N.W.2d 393. However, since from a full development of the case on rehearing competency may be found, we will treat other assignments of error pertaining to the question of undue influence.

■ SDCL 29-2-5 states that a will may be denied probate when the will is procured by undue influence. The burden is on the contestant to prove undue influence. *Peterson v. Imbsen, supra.* The essential elements of undue influence necessary to invalidate a will are well stated in *In re Rowland's Estate,* 1945, 70 S.D. 419, 18 N.W.2d 290, as "(1) a person susceptible to such influence, (2) opportunity to exert such influence and effect the wrongful purpose, (3) a disposition to do so for an improper purpose, and (4) a result clearly showing the effect of such influence." (citations omitted)

Proponents concede that Hertha was upset over the death of her husband and, coupled with her physical condition, may have resulted in Hertha being accessible to undue influence. Thus the first element having been agreed to only the other elements need be considered. Contestants assign as error the trial court's asking each of the contestants' witnesses "Were you at anytime or place prevented or attempted to prevent access to the deceased, Hertha R. Melcher?" Each witness testified in the negative and on that basis the court entered its findings of fact as follows:

> "9. That the Contestants had free access to the decedent at all times from the date of death of the husband, August Melcher, on January 25th, 1973, to the decedent's death on September 10th, 1973, to discuss all business matters with her and no one at any time or place prevented or attempted to prevent access to the deceased Hertha Melcher."

One of the contestants, Emma Voight, was also a patient in the same hospital and was frequently visited by Hertha. Clearly, several others were physically present and could have exerted influence. It is apparent, however, from the statement of the trial court at the close of the evidence that the court, having reviewed a number of cases in which a finding of undue influence had been considered on appeal to this court, erroneously concluded that only facts displaying the degree of dominance shown in *Re Metz' Estate, supra,* warranted a finding of undue influence. It is well settled under the decisions of this court that the question of undue influence is to be determined from all the surrounding facts and circumstances, *Re Metz' Estate, supra,* and does not turn on a single issue as intimated by the trial court. *In re Rowland's Estate, supra.* The trial court having applied the wrong rule of law, we have no hesitancy in reversing and remanding this case to the trial court under the language of *Johnson v. Shaver,* 1919, 41 S.D. 585, 172 N.W. 676. Though the scope of our review has been changed by virtue of SDCL 15-6-52(a), the principle for which that decision stands as it relates to application of the law to the facts in the case remains pertinent.

 That a party benefited by a will and had the motive and opportunity to assert undue influence is not sufficient to invalidate the will, where there is no evidence that he did assert such influence. *Ekern v. Erickson,* 1916, 37 S.D. 300,. 312, 157 N.W. 1062; *In re Estate of Hobelsberger, supra.* "No presumption of undue influence is raised from the fact that the benefits received under a will were obtained by acts of kindness of the beneficiary." *In re Estate of Hobelsberger,* 85 S.D. at 291, 181 N.W.2d at 460. A different rule applies, however, if a confidential or fiduciary relationship is established. In the present case, although the trial court made no findings on the existence of a confidential relationship, such a relationship could establish support for the third and fourth elements of undue influence. "Such relationship exists whenever trust and confidence is reposed by the testator in the integrity and fidelity of another." (citations omitted) *In re Estate of Hobelsberger,* 85 S.D. at 291, 181 N.W.2d at 460. A presumption of undue influence arises "where a confidential relationship exists between the testator and a beneficiary who actively participates in the preparation and execution of a will and unduly profits therein." *Re Metz' Estate,* 78 S.D. at 222, 100 N.W.2d at 398.

 After Hertha had asked several of her in-laws to be the administrator of Gus' estate and they had refused, Bill Bauer's opportunity to establish a confidential relationship arose when he agreed to so act. His testimony, offered in rebuttal to contestants' evidence, clearly established his participation in the selection of the attorney to handle Gus Melcher's estate and ultimately to prepare the will in question after the contestants were unable to contact Mr. Chas. E. Gorsuch who had drafted Gus' and Hertha's prior will. He placed himself in such a position by frequent and extended visits with Hertha, both alone and in the company of the attorney of his choice, as to at least raise a question of fact as to whether he had established a fiduciary or confidential relationship with the decedent. *Davies v. Toms,* 1954, 75 S.D. 273, 63 N.W.2d 406; *In re Blake's Estate,* 1965, 81 S.D. 391, 136 N.W.2d 242. On retrial of the case this issue should be determined because if it can be shown that Bauer actively participated in the preparation and execution of the will, a presumption of undue influence arises and the burden of going

forward with the evidence shifts to the beneficiary to show that he took no unfair advantage of his dominant position. *Re Metz' Estate, supra.* Even if Bauer did not participate to that extent, a confidential relationship, if found to exist, may require closer judicial scrutiny than was occasioned in the original proceeding. *In re Daly's Estate,* 1932, 59 S.D. 403, 240 N.W. 342.

The contestants further alleged as error the refusal of the trial court to receive their offer of proof seeking to establish that Mr. Maynes, some six months after the execution of the will, stated in the presence of several witnesses that at the time of the making of the will Hertha's condition was such that she would have signed a will leaving all of her property to Mr. Maynes if he had asked her to do so. Contestants alleged the court also erred in denying them the right to cross-examine Bill Bauer relative to the circumstances under which he acquired title to a car which Hertha apparently owned and had offered to sell to others. A car does not appear in the inventory and Bauer, on direct examination, acknowledged his possession and ownership. In respect to these issues "any evidence which shows susceptibility, opportunity, disposition to use, or a result indicative of undue influence is admissible." *In re Blake's Estate,* 81 S.D. at 398, 136 N.W.2d at 246. Clearly, the evidence was admissible as it properly relates to establishing the essential elements of undue influence as previously set forth.

Additionally, the contestants raised the issue of unnatural disposition. Viewing the relationship of the parties involved, that claim is not tenable. *In re Armstrong's Estate,* 1937, 65 S.D. 233, 272 N.W. 799; *In re Estate of Hobelsberger, supra; In re Estate of Fleege,* 1975, 89 S.D. 137, 230 N.W.2d 230.

We conclude that the trial court erred in disallowing certain evidence having a bearing on both the issues of competency and undue influence which warrants a new hearing. SDCL 30-35-18; *Re Poulsen's Estate,* 1946, 71 S.D. 149, 22 N.W.2d 734. Accordingly, the judgment is reversed and the case remanded for retrial not inconsistent with this opinion.

All the Justices concur.