In the Matter of the ESTATE OF
Elizabeth Ellen JAHNEL,
Deceased.

Edgar JAHNEL, Roy Jahnel, Harold
Jahnel, and Audrey Kanain,
Plaintiffs and Appellees,

v.

FIRST NORTHWESTERN TRUST
COMPANY OF SOUTH DAKOTA
and Elmer Thurow, Defendants,

Chrystal Madsen, Defendant
and Appellant.

Nos. 15406, 15415.

Supreme Court of South Dakota.

Argued Sept. 2, 1987.

Decided Aug. 24, 1988.

Rehearing Denied Sept. 29, 1988.

James A. Wyly of Richardson, Groseclose, Kornmann, and Wyly, Aberdeen, for plaintiffs and appellees.

Thomas P. Tonner of Tonner & Tobin, Aberdeen, for defendant and appellant.

TAPKEN, Circuit Judge.

This appeal results from the finding that Chrystal Madsen (Chrystal) breached her duties as an implied trustee and fiduciary involving the management of rental properties which had been previously transferred to an express trust. We affirm, in part, and reverse, in part.

Elizabeth Jahnel (Elizabeth) died in January 1981 at the age of ninety-four years. At the time of her death she left five surviving children: Edgar Jahnel (Edgar), Roy Jahnel (Roy), Harold Jahnel (Harold), Audrey Kanian (Audrey) and Chrystal. Edgar, Roy, Harold and Audrey, as individuals, along with the estate of Elizabeth Jahnel, brought this action against First Northwestern Trust Company of South Dakota (Northwestern Trust), Elmer Thurow (Thurow), and Chrystal seeking a) accountings by Elmer and Chrystal; b) to adjudge

Chrystal held certain rental properties in an implied trust for the estate; c) to compel Chrystal to convey certain property previously deeded to her by Elizabeth back to the estate; d) for Thurow and Chrystal to pay to the estate monies derived by them from the properties; and e) costs and attorney fees. Claims against Northwestern Trust and Thurow have been disposed of prior to this appeal. Only the matters relating to Chrystal are involved in this appeal.

In 1945 Elizabeth inherited several pieces of rental property as well as a residence located in Aberdeen from her husband, Frank Jahnel. Elizabeth managed the properties after 1945. In 1953 Roy suggested that Elizabeth dispose of the properties and invest the proceeds. Elizabeth did not follow the suggestion and continued to manage the properties until 1966. In 1966 Elizabeth conveyed her residence and two rental parcels to Chrystal, reserving a life estate. Elizabeth continued to live in her residence after the 1966 conveyance. The value of these properties was established at $99,000.00.

In 1969 Elizabeth created an express trust by written instrument. In the trust Elizabeth nominated Thurow to be her trustee. The trust instrument was executed by Elizabeth as well as Thurow in July 1969. Pursuant to the provisions of the trust, Elizabeth conveyed by deed the remainder of her real estate, consisting of rental producing properties, to her trustee in October 1969.

Subsequent to the execution of the express trust, the children of Elizabeth, excluding Chrystal, attempted to have the trust revoked and the property deeded to Chrystal placed back in Elizabeth's name. The four children employed attorneys and family discussions were held with Elizabeth, but the trust remained as well as the 1966 deed to Chrystal.

Elizabeth maintained contact with all her children by way of telephone conversations, letters, presents and visits. It is apparent however, that Elizabeth spent more time with Chrystal and her family. Chrystal and Elizabeth enjoyed a close mother-

daughter relationship. There is little doubt that the relationship was of confidential in nature.

The trust agreement was established to allow Elizabeth to relieve herself of the duties of managing the rental properties included in the trust deed. Elizabeth was the sole beneficiary to the principal and net income of the trust property. The trust instrument expressly provided Thurow with the following authority:

> ... the Trustee may in his discretion place the same in the hands of a real estate broker or brokers or other person including any child of the Trustor and pay reasonable fees for his or their services in connection therewith.

Elizabeth reserved to herself without consent of the trustee or any beneficiary of the trust the following powers: (1) to add property to the trust acceptable to the trustee, (2) to receive an annual written statement showing all cash transactions and an inventory, with her approval of the same to be binding and conclusive to all persons, and (3) to examine the books and records of the trustee at all reasonable times as related to the trust.

The trustee was expressly granted certain powers under the instrument including the following:

> The trustee shall collect, receive, receipt for and manage the principal and income of the trust estate ...

On December 1, 1969, Thurow, in his capacity as trustee, executed an instrument entitled a "Supplement To Trust Agreement." This agreement was not executed by Elizabeth and purported to provide that Chrystal and Edgar were to act as co-trustees, in an advisory capacity, in the handling of the trust.

Thurow acted as trustee until the death of Elizabeth. During part of the period he employed a real estate company to collect rents from the trust property. This arrangement ended in approximately 1978. Subsequently, Chrystal's daughter collected the rent and received compensation of $50.00 per month. It was about at this time that Chrystal became involved with the rental properties.

Elizabeth was a strong-willed, independent and intelligent woman until her death. Her physician testified she was competent until her death, except for temporary periods of hospitalization. This same opinion was given by her live-in housekeeper, and by Thurow, her long-time attorney.

Chrystal's acts involving the trust properties were known and recognized by trustee Thurow. It is apparent Elizabeth also had knowledge of Chrystal's involvement in the collection of rent from the properties and payment of certain debts after the trust was established. Elizabeth did execute waivers of accounting on several occasions to the trustee. The trial court never made a finding of incompetence of Elizabeth during the period of the trust.

The trial court conducted the first hearing in this matter on October 4, 1982. As a result, the trial court required an accounting from Thurow and Chrystal and denied the request to set aside the 1966 deed to Chrystal. A second hearing was held in December 1983. The trial judge found an implied trust and fiduciary relationship existed between Chrystal and her mother. Chrystal was ordered to pay $1,500.00 for attorney fees and to hire a certified public accountant to render an audit of the dealings Chrystal had with her mother.

After the CPA audit, which was a $25,000.00 expense to Chrystal, a third hearing was held. The findings of fact entered by the trial court state that Chrystal developed a close confidential relationship with her mother, acted in the running of the rental business of the trust property, and received and disbursed income of the trust property; that Chrystal failed to keep records of the financial activities of the trust; that Chrystal failed and refused to furnish information to the plaintiffs (appellees herein) concerning the trust; that Chrystal conducted the trust and trust properties in an improper and irregular manner and breached her fiduciary duty (along with Thurow who is no longer involved in this appeal); and, the conduct of Chrystal and Thurow in handling the trust was willful and fraudulent. The court entered its judgment against Chrystal in the

sum of $10,000.00 plus interest from January 26, 1981; for $10,000.00 for partial attorney fees and costs against Chrystal and Thurow, jointly and severally; and, $10,000.00 in punitive damages against Chrystal. It is from this judgment that Chrystal appeals.

The classification of trusts are defined as either express or implied in SDCL 55–1–2. The trust instrument created by Elizabeth was express [1] and was created as to Thurow as trustee.[2] The supplemental trust purportedly created by Thurow is of no effect since this instrument was never created, executed or acknowledged by the trustor, Elizabeth, nor accepted by either Chrystal or Edgar, the named co-trustees.

■ The trial court determined that one of the grounds for liability of Chrystal was that she acted as a trustee under an implied trust. An implied trust is created by operation of law, SDCL 55–1–6, and arises in the instances described in §§ 55–1–7 to 55–1–10, inclusive. *Noll v. Brende*, 318 N.W.2d 319 (S.D.1982). In reviewing the language of those statutes, it is apparent that the facts of this case do not create an implied trust. Elizabeth transferred all her ownership in and to the rental properties to her express trustee.[3] By her own election, the terms of the express trust provided that Elizabeth retain only the right to receive income or principal, in the discretion of her trustee, for her support and maintenance. *Continental Bank v. Country Club Mobile Est.*, 632 P.2d 869 (Utah 1981). For the trial court to find Chrystal liable to her brothers and sisters for rental proceeds collected from property previously owned by Elizabeth, it necessarily must follow

that Elizabeth owned the property of the implied trust or transferred the ownership to the implied trust. This is impossible since Elizabeth did not own the subject property at the time of the implied trust.

Although the trust instrument did authorize Thurow to place the rental properties in the hands of a real estate broker or other persons, including any child of the trustor, this does not lessen the duties of Thurow as trustee in his fiduciary capacity.

> Assuming that a trustee is justified in delegating the performance of a certain act for the trust, he must exercise reasonable prudence and care in employing the assistant. He must make a reasonable investigation as to the honesty and efficiency of the agent or servant, must give him adequate instructions, must supervise and check the performance of the work delegated, and in the case of advice must exercise his own judgment as to its soundness, so far as he is able.... Thus if a trustee properly delegates to a real estate management firm the power to collect rents from tenants of the trust property, but the trustee is negligent in investigating the character and efficiency of the management firm, and the agent steals rents which are paid to him by the tenants, the tenants are relieved of their liabilities and the receipts given them are binding on the trustee in his representative capacity. But the trustee is liable to the beneficiaries for negligence in selecting the agent.

Bogert, Trusts § 92 (6th Ed.1987). The trial court should have determined the liability of Thurow, if any, in his acts in

> (1) His acceptance of the trust or his acknowledgement, made upon sufficient consideration, of its existence; and
> (2) The subject, purpose, and beneficiary thereof.

3. SDCL 43–10–14 provides:
> Except as in this chapter provided, every express trust in real property, valid as such, in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property but may enforce the performance of the trust.

---

1. SDCL 55–1–4 provides:
> Subject to the provisions of § 43–10–4 concerning express trusts in relation to real property an express trust is created as to the trustor and beneficiary by any words or acts of the trustor indicating with reasonable certainty:
> (1) An intention on the part of the trustor to create a trust; and
> (2) The subject, purpose, and beneficiary thereof.

2. SDCL 55–1–5 provides:
> An express trust is created as to the trustee by any words or acts of his, indicating with reasonable certainty:

selecting and supervising Chrystal as his agent.

The liability of a trustee for acts of his agent are addressed in Restatement of Law 2d, Trusts, § 225:

(1) Except as stated in Subsection (2), the trustee is not liable to the beneficiary for the acts of agents employed by him in the administration of the trust.

(2) The trustee is liable to the beneficiary for an act of such agent which if done by the trustee would constitute a breach of trust, if the trustee

(a) directs or permits the act of the agent; or

(b) delegates to the agent the performance of acts which he was under a duty not to delegate; or

(c) does not use reasonable care in the selection or retention of the agent; or

(d) does not exercise proper supervision over the conduct of the agent; or

(e) approves or acquiesces in or conceals the act of the agent; or

(f) neglects to take proper steps to compel the agent to redress the wrong.

Although SDCL 55–1–11 [4] does provide for the finding of implied trusts as a matter of equity apart from the provisions of SDCL 55–1–7 through 55–1–10, Chrystal was an agent of the trustee.[5] Therefore, any liability of Chrystal as an implied trustee was error.

■ The trial court also found that a fiduciary relationship existed between Elizabeth and Chrystal. The trial court further held that Chrystal exerted an undue influence over Elizabeth in collecting the rent proceeds of the express trust property. As a result, Chrystal was held liable to her brothers and sisters. There is no question that Elizabeth and Chrystal enjoyed a confidential relationship. *Matter of Heer's Estate*, 316 N.W.2d 806 (S.D.1982). The finding by the trial court that Chrystal exerted undue influence over Elizabeth in the collecting of the rents was error since Elizabeth had no control or ownership over the rental properties over which to exert any undue influence. If any influence by Chrystal was exerted it would have had to have been over the owner of the property, namely, Thurow as trustee. Further, there was no determination of Elizabeth's competency by the trial court. Absent a justified finding of competency, the question of undue influence cannot arise. *In re Estate of Melcher*, 89 S.D. 253, 232 N.W.2d 442 (1975).

Accordingly, we reverse the allowance of compensatory damages. The award of exemplary damages is also reversed since compensatory damages must be allowed before an award of punitive damages is proper. *Johnson v. Kirkwood, Inc.*, 306 N.W.2d 640 (S.D.1981). In light of this decision it is unnecessary to discuss the issues of laches, estoppel, statute of limitations, lack of a request and proof of compensatory damages and amendment of pleadings.

■ The trial court awarded attorney fees against Chrystal. Such an award was improper since there must be a specific statute authorizing their allowance. SDCL 15–17–7; *Assman v. J.I. Case Credit Corporation*, 411 N.W.2d 668 (S.D.1987). Further, Chrystal was not an express trustee over the property. Even if she would have been an implied trustee, as found by the trial court, the award of attorney fees was improper. *Noll v. Brende, supra.*

Appellees have requested a review of two matters. The first matter is whether the trial court erred concerning the amount

---

**4.** SDCL 55–1–11 provides:

The enumeration in §§ 55–1–7 to 55–1–10, inclusive, of cases wherein an implied trust arises does not exclude or prevent the arising of an implied trust in other cases nor prevent a court of equity from establishing and declaring an implied, resulting, or constructive trust in other cases and instances pursuant to the custom and practice of such courts.

**5.** SDCL 55–1A–31 provides:

A trustee may employ attorneys, accountants, investment advisors, agents or other persons, even if they are associated with himself, to advise or assist himself in the performance of his duties; act without independent investigation upon their recommendations; and instead of acting personally, employ one or more agents to perform any act of administration, whether or not such act is discretionary.

of actual damages allowed. Since the award of actual damages has been reversed, this issue is without merit. The second matter is whether the court erred in refusing to set aside the transfer of property from Elizabeth to Chrystal by virtue of the 1966 deed on the grounds of undue influence.

■ A confidential relationship exists whenever trust and confidence is reposed by a person in the integrity and fidelity of another. *Matter of Heer's Estate, supra.* As stated above, the trial court determined that a confidential relationship existed between Elizabeth and Chrystal. Under certain circumstances, a confidential relationship can give rise to a presumption of undue influence if the beneficiary actually participated in the preparation and execution of the instrument and unduly profits therefrom. *Pope v. Brown,* 357 N.W.2d 510 (S.D.1984).

■ The trial court found that at the time of the execution of the 1966 deed, Elizabeth was competent and the deed was executed without the prior knowledge of Chrystal or her husband. After reviewing the facts we agree that no undue influence existed at the time of the preparation and execution of the 1966 deed and Elizabeth understood the consequences of her act.

The decision of the trial court in finding Chrystal liable for her role in the rental properties as an implied trustee or by an undue influence for actual and punitive damages and attorney fees is reversed. The finding that no undue influence existed over Elizabeth involving the 1966 deed is affirmed.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., concurs in part and dissents in part.

TAPKEN, Circuit Judge, sitting for MILLER, J., disqualified.

SABERS, Justice (concurring in part and dissenting in part).

I concur in all respects, except that I dissent from the reversal of the compensatory and punitive damage awards.

The trial court found Chrystal to be an implied trustee by virtue of the fact that she "received and disbursed income of the trust property" and that she acted "willful and fraudulent toward the plaintiffs." The trial court further found in its memorandum decision, incorporated into the findings of fact, that "there are innumerable unexplained discrepancies in funds and assets which otherwise would have gone to plaintiffs as beneficiaries of the trust and estate." Finally, the trial court found that some of the rent proceeds from the trust properties went to the Madsens' (Chrystal's) account.

The above findings of fact support the finding of an implied trust under SDCL 55-1-8. SDCL 55-1-8 provides:

One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it.

Under SDCL 55-1-8 there are three elements which must be satisfied to create an implied trust. First, a person must "gain a thing." The trial court found that some of the rent proceeds from the trust property went into the Madsens' account. Though some of these proceeds which were deposited in the Madsens' account went to improvements or expenses on the trust property,* much of this money was unaccounted for by Chrystal. This evidence satisfies the first element under SDCL 55-1-8. The second element is that the gain must be accomplished by some wrongful act. This element is satisfied by the trial court's finding of fraud by Chrystal toward the plaintiffs. There is evidence in the record which supports this finding, as some testimony indicated Chrystal attempted to de-

---

* It should be noted that the trial court considered Chrystal's contributions toward improvements and expenses on the trust property, and credited Chrystal to that extent in awarding compensatory damages.

ceive her brothers and sister as to the state of the trust property and refused to give any information or accounting regarding the trust. Finally, the third element under SDCL 55–1–8 is that the person[s] claiming an implied trust must have a better right to the thing wrongfully gained. The trial court found that the trust proceeds which went to Madsens' account otherwise would have gone to the plaintiffs as beneficiaries of the trust. Under the trust agreement the proceeds from the trust property were to be paid to Elizabeth for support, used for improvements on the trust property, or paid back into the trust. On the death of Elizabeth the entire trust was to pass through the estate to the children. Clearly, by wrongfully obtaining some of the rent proceeds Chrystal gained at the future expense of her siblings. Thus, Chrystal became an implied trustee for the benefit of her brothers and sister who became entitled to these proceeds and/or the benefits of these proceeds at the time of Elizabeth's death.

The majority appears to have abandoned its role as a reviewing court in reversing the judgment of the trial court. They do not attempt to challenge any of the trial court's factual findings as clearly erroneous, but simply conclude that there are no facts which support an implied trust in this case. The majority bases their conclusion on Elizabeth's non-ownership of the trust property. However, ownership is not even one of the considerations for an implied trust under SDCL 55–1–8.

SDCL 55–1–8 is sufficient to support the trial court's finding of an implied trust, but it should be noted that SDCL 55–1–11 could also give rise to an implied trust in this case, contrary to the majority's assertion. SDCL 55–1–11 is a broad, equitable remedy, which may be available in situations not encompassed by SDCL 55–1–7 through 55–1–10. The statute provides:

> The enumeration in §§ 55–1–7 to 55–1–10, inclusive, of cases wherein an implied trust arises does not exclude the arising of an implied trust in other cases nor prevent a court of equity from establishing and declaring an implied, resulting, or constructive trust in other cases and

instances pursuant to the custom and practice of such courts.

A leading commentator has recognized that implied or constructive trusts are elusive of definition and may arise in many situations where such an equitable remedy is necessary. V. Scott on Trusts § 462 (1967). Scott states that a constructive trust most often arises where "a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id.* The majority implies that this is the only situation where such a trust may arise. Scott notes that a constructive trust is often recognized as a remedy for fraud. "It is a jurisdiction by which a Court of Equity, proceeding on the ground of fraud, converts the party who has committed it into a trustee for the party who is injured by that fraud." *Id.* (*citing McCormick v. Grogan*, L.R. 4 H.L. 82, 97 (1869)).

The above definitions are consistent with SDCL 55–1–11, which permits a court of equity to declare an implied trust even in the absence of a specific allegation that property wrongfully was transferred to or converted by the implied trustee.

The majority does not contest the trial court's finding of fraud, which is supported by the record. Despite this finding, the majority rejects SDCL 55–1–11 as a basis for finding Chrystal liable as an implied trustee. They reason that Chrystal was an agent of the express trustee, Thurow, and thus could not be an implied trustee. This reasoning reveals a fundamental misperception as to the nature of an implied trust. In equity, an implied trust may arise to protect one party from another's unjust enrichment or wrongdoing, regardless of the legal relationship. In such situations, an implied trust permits a court of equity to provide a remedy by adjusting the relationship of the parties according to the reality of the situation, in contrast to a rigid, often harsh legal result. The implied trust statutes provide the tool for such adjustment, under proper circumstances.

In this case, Chrystal might have been an agent of the express trustee, Thurow, in

form. However, in substance, it appears Chrystal actually carried out many of the duties as trustee over the trust property. Thurow, on the other hand, appears to have played merely an advisory role as attorney to the trustee. Even if these circumstances alone were insufficient to find Chrystal an implied trustee under the implied trust statutes, the trial court's findings that rent proceeds from the trust property were placed into Madsens' account, and fraud on the part of Chrystal certainly provide a sufficient basis. Chrystal's wrongdoing should not be hidden behind a legal veil when an equitable remedy is statutorily available to right these wrongs.

As an implied trustee Chrystal owed a fiduciary obligation to the beneficiaries to care for the trust and account for the income and expenses of the trust, particularly in light of her extensive involvement and dealing with the trust property. The breach of this obligation created a basis to award compensatory damages. In this circumstance it also was proper for the trial court to award punitive damages as there was a finding of willful and fraudulent behavior on the part of Chrystal.

Therefore, I respectfully dissent as to the reversal of the trial court's award of compensatory and punitive damages to the appellees.