TIME OUT, INC., and Alpha Corporation, Plaintiff and Appellee,

v.

Chris KARRAS, Defendant and Third Party Plaintiff and Appellant,

v.

Gus CUSULOS, Third Party Defendant and Appellee.

Nos. 16991, 16999.

Supreme Court of South Dakota.

Argued Feb. 12, 1991.

Decided April 24, 1991.

Rehearing Denied May 22, 1991.

Steven Sanford, Cadwell, Sanford & Deibert, Sioux Falls, for plaintiff and appellee.

Scott G. Hoy, Carlsen & Hoy, Sioux Falls, for defendant and third party plaintiff and appellant.

John L. Wilds, Sioux Falls, for third party defendant and appellee.

WUEST, Justice.

In 1975, Chris Karras (Karras) learned the Time Out restaurant and lounge in Sioux Falls, South Dakota was for sale. After some negotiations, Karras offered to purchase the business for $105,000. This offer was accepted. Karras was only interested in the restaurant portion of the business, however, and did not want to operate the bar. He approached Chris Christopolos (Christopolos) about purchasing the lounge. The parties agreed that Christopolos would purchase the bar for $83,000 and Karras would purchase the restaurant for $22,000, totalling the $105,000 purchase price.

While working out their business arrangement, the parties realized that if Karras were to purchase the restaurant and bar and then sell the bar to Christopolos, separate hearings on the liquor license would have to take place and an additional transfer fee would have to be paid. With this understanding, the parties negotiated a new offer with the seller, which provided that G & C Realty (a partnership of Christopolos and Gus Cusulos) and Karras would jointly purchase the business. Contemporaneously, G & C Realty and Karras entered into an agreement to divide the assets purchased, Karras acquiring the restaurant assets and G & C Realty acquiring the bar assets. Shortly thereafter, G & C Realty purchased the entire building and entered into a lease agreement with Karras for the restaurant. Both parties used the name "Time Out" in their business operations; the bar was called the "Time Out Lounge" and the restaurant was called the "Time Out Steakhouse and Restaurant."

Christopolos sold his interest in G & C Realty to Gus Cusulos (Cusulos) in 1980. In November 1983, G & C Realty (comprised solely of Cusulos) agreed to sell the lounge assets to Time Out, Inc., a South Dakota corporation. The purchase agreement between Time Out, Inc. and G & C Realty granted to Time Out, Inc. the exclusive right to use the name "Time Out Lounge," as well as all logos, trademarks and copyrights owned and utilized by G & C Realty. G & C Realty then leased the lounge portion of the building to Time Out, Inc.

In 1984, Karras incorporated the restaurant. He obtained a trademark from the State of South Dakota in the name "Time Out Steakhouse and Restaurant" and the logo of a referee signaling time out.

The lease from G & C Realty to Karras expired on November 30, 1985, without any legal right of Karras to extend or renew the term. Prior to expiration of the lease, Cusulos suggested to Christopolos that he might operate the restaurant after Karras vacated the premises. Christopolos and Cusulos reached an agreement whereby Cusulos would lease the entire business property to Time Out, Inc., and Time Out, Inc. would then sub-let the restaurant portion of the business to Alpha Corporation, comprised of Christopolos and his son, George.

Karras learned of this new business arrangement with Alpha Corporation (Alpha)

and inquired of Christopolos whether he intended to continue to use the Time Out name. Christopolos informed Karras that he did.

The morning after Karras vacated the restaurant, there was discovered substantial damage. Alpha contends this damage was caused maliciously by Karras and resulted in expense and lost income for Alpha.

Karras moved his restaurant to a nearby building in 1986 after his lease expired. He advertised and operated this new restaurant as the Time Out Steakhouse and Restaurant.

Time Out, Inc. commenced an action for damages against Karras. Karras, through an amended counterclaim, alleged an infringement of his business name and trademark rights and joined Cusulos as a third-party defendant. The trial court granted summary judgment to Time Out, Inc. on the name and trademark issues, which was reversed and remanded on appeal to this court. *See Time Out, Inc. v. Karras*, 392 N.W.2d 434 (S.D.1986) (hereafter *Time Out I*).

On remand, the case was bifurcated into two separate jury trials: The first trial concerned the ownership of the business name and the validity of the trademark. The second trial concerned trademark infringement and damages claimed by the parties against one another. By stipulation, Alpha was added as an additional plaintiff after the first trial.

The first jury determined that Karras' trademark was valid and that Karras was the sole owner of the name "Time Out" and the logo of a referee signaling time out. In the second trial, the jury returned a verdict for Alpha and Time Out, Inc. on their property damage claims and returned a verdict on Karras' counterclaim of $0 compensatory damages and $50,000 punitive damages.

After the second trial and upon motion by counsel, the trial court excised the punitive damages because no compensatory damages had been awarded. The court also amended the judgment of the jury verdict so that Alpha could continue to use the name Time Out Lounge.

Karras appeals to this court and raises six issues:

I. Whether the trial court erred in its response to a jury question in the deliberations of this matter;

II. Whether the trial court erred in allowing the jury to hear evidence of the initial appeal in this case;

III. Whether the trial court erred in amending the judgment, permitting Alpha to continue to use the name "Time Out Lounge";

IV. Whether the trial court erred in directing a verdict in favor of Cusulos on the issue of conspiracy of joint tortfeasor liability with the owners of Time Out, Inc. and Alpha;

V. Whether the trial court erred in failing to grant Karras' motion for directed verdict against Alpha for damages claimed by Alpha; and,

VI. Whether the trial court erred in taking the jury verdict away from Karras without granting a new trial.

Time Out, Inc. and Alpha raise by notice of review:

VII. Whether the trial court erred in denying Time Out, Inc.'s motion for directed verdict in the first trial and Alpha's subsequent motion for judgment notwithstanding the verdict.

I.

▮▮▮ Following extended deliberations by the second jury, a question was addressed to the trial judge: "What date did the Supreme Court of the State of South Dakota award Chris Karras sole ownership of the Time Out trademark and logo by overturning the Lower Court's ruling available from Court testimony?" Over Karras' objection, the trial court answered the question, stating: "A Jury on July 13, 1989, determined that Chris Karras has ownership rights to the trademark 'Time Out' and the logo of the referee signalling time out; and that Chris Karras obtained a valid trademark registration of 'Time Out Steakhouse and Restaurant' and logo." Karras requested the court's answer indi-

cate the registration was valid as of 1984, but his request was denied.

Within moments of receiving the court's answer, the jury rendered its verdict. Karras was awarded $0 compensatory damages, $0 interest, and $50,000 punitive damages. Karras' subsequent motion for a new trial was denied. He argues the trial court's answer to the jury question was in error.

Trial courts have considerable discretion in responding to jury requests during deliberations, and on appeal, their decision will not be disturbed except for abuse of discretion. *See* SDCL 15-6-51(a); *Gilbert v. Caffee*, 293 N.W.2d 893 (S.D.1980); *Beck v. Wessel*, 90 S.D. 107, 237 N.W.2d 905 (1976); *Wittmeier v. Post*, 78 S.D. 520, 105 N.W.2d 65 (1960).

The jury's question was founded upon the faulty premise that the South Dakota Supreme Court had determined the validity of the trademark.[1] It is also evidence the jury was considering the validity of the trademark—an issue adjudicated in the first jury trial. The trial judge's answer did nothing to correct the jury's faulty thinking, and indeed, may have confused the issue further. By instructing the jury that the validity of the trademark had been determined only a few months earlier, without also explaining the trademark was valid from its registration date in 1984, the trial judge may have unintentionally mislead the jury into thinking Karras' trademark had been infringed for only a few months. Such an analysis is consonant with the jury's award of punitive damages, but no compensatory damages. Under the circumstances, we find the trial court abused its discretion, and we reverse.

## II.

During the second trial, a portion of Karras' appellate brief from his first appeal was admitted into evidence. It consisted of the brief's cover page, the signature page and the following text:

At this point it must be noted that Karras is not claiming the exclusive right to use the name Time Out in any other context than in the operation of a restaurant. Thus, a claim that the name Time Out Lounge is owned by plaintiff is not involved in this claim. This apparently was misapprehended by the lower court.

Karras contends admission of the brief was prejudicial error in two respects: (1) it confused the jury as to whether damages for trademark infringement were to be measured from the date of trademark registration or the time of appeal, and (2) inclusion of such evidence held Karras to previous arguments on the issue of trademark ownership that, at the time, had not yet been tried before a jury. He submits this evidence prompted the jury's question to the court inquiring into the time when Karras' trademark was adjudicated valid.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

SDCL 19-12-3. The term prejudice does not mean damage to the opponent's case from the legitimate probative force of the evidence, but refers to the unfair advantage which results from the capacity of the evidence to persuade by illegitimate means. *Kaarup v. Schmitz, Kalda and Assoc.*, 436 N.W.2d 845, 850 (S.D.1989); *State v. Dokken*, 385 N.W.2d 493, 497 (S.D.1986). The trial court has broad discretion in balancing the probative value of evidence versus its prejudicial effect, and the trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *Kaarup*, 436 N.W.2d at 850; *State v. Grooms*, 399 N.W.2d 358, 361 (S.D.1987).

We agree with Karras that the admission of this evidence was prejudicial error. The jury in the first trial determined Karras' trademark was valid as of the date of its

---

**1.** This court never determined the ownership and validity of the Time Out trademark. In *Time Out I*, 392 N.W.2d at 437, we held the trademark's validity and ownership was a question of fact for the jury. The jury in the first half of the bifurcated trial determined that Karras owned the trademark and that it was valid as of the date of its registration in 1984.

registration and that Karras was the sole owner of the name "Time Out." The second jury was informed of this fact and was impanelled to consider only the issue of damages. However, the brief informed the jury that, at some point, the validity of Karras' trademark had been in question. It is clear from their inquiry to the court they were considering the validity of the trademark in making their decision. The text of the brief was only marginally relevant and probative on the issue of damages.[2] The danger of confusing and misleading the jury was manifest and, judging from their inquiry to the court, was realized. The trial court abused its discretion in admitting the brief, and we reverse on this issue.

### III.

Notwithstanding the jury determination that Karras was the sole owner of the name "Time Out," the trial court amended the judgment so as to permit Time Out, Inc. to continue to use the name "Time Out Lounge" in connection with its liquor establishment. The court premised its decision on the fact that Karras had previously taken the position he had no interest in the name "Time Out Lounge," but only had an interest in the name "Time Out Steakhouse and Restaurant." Thus, he was estopped to deny Time Out, Inc. the use of "Time Out Lounge" for its bar.

However, the estoppel argument asserted against Karras applies with equal force against Time Out, Inc. At the first trial, Time Out, Inc. argued, and the trial court agreed, the only portion of the name "Time Out Steakhouse and Restaurant" which could be trademarked was the distinctive phrase "Time Out." Consequently, the jury considered only the ownership of the name "Time Out" and determined that Karras was the sole owner. Karras therefore acquired broader trademark rights than he originally asserted *at the behest of Time Out, Inc.* "One who has taken a position in a judicial proceeding may not later take a position inconsistent with his earlier position." *Federal Land Bank of Omaha v.*

*Johnson,* 446 N.W.2d 446, 447 (S.D.1989). *Accord Warner Supply Co. v. Duerr, Pliley, Thorsheim Dev., Inc.,* 355 N.W.2d 838, 840 (S.D.1984). Thus, it is Time Out, Inc. that is estopped by record from arguing Karras acquired no rights as to "Time Out Lounge."

Karras may enjoin Time Out, Inc. from continued use of the name "Time Out Lounge." *See* SDCL 37-6-24; *Zweck v. Aberdeen Laundry and Dry Cleaning Co.,* 44 S.D. 176, 183 N.W. 118 (1921). It was error for the trial court to amend the judgment so as to permit such use. We reverse.

### IV.

Karras submits Cusulos and Alpha conspired to commit a tort against Karras because these parties planned to expel Karras from his restaurant and take his business. Karras cites the following evidence in support of his theory: Cusulos never attempted to trademark the name "Time Out," yet he attempted to sell the name to Time Out, Inc. in 1983; Cusulos told Karras that any damage caused by his moving out of the restaurant would not have to be repaired because Alpha intended to remodel the building; and Cusulos and Alpha discussed Alpha's operating the restaurant prior to the expiration of Karras' lease.

Under these facts, the only connection between Cusulos and Alpha is their discussion about Alpha taking over the restaurant. Karras had no right to renew his lease once it expired, and the fact that Cusulos and Alpha discussed the restaurant operation evidences little more than common business sense.

The trial court directed a verdict in favor of Cusulos on this question. Upon such a motion, the trial court must determine whether there is substantial evidence to sustain the action. SDCL 15-6-50(a); *Sabag v. Continental South Dakota,* 374 N.W.2d 349, 355 (S.D.1985); *Smith v. Halverson,* 273 N.W.2d 146, 149 (S.D.1978). The evidence which is most favorable to the

---

**2.** *See* issue III, *infra.*

nonmoving party must be accepted and the trial court must indulge all legitimate inferences in his favor. *Sabag*, 374 N.W.2d at 355; *Weber v. Bernard*, 349 N.W.2d 51, 53 (S.D.1984). If sufficient evidence exists so reasonable minds could differ, a directed verdict is inappropriate. *Cox v. Brookings Int'l Life Ins. Co.*, 331 N.W.2d 299, 300 (S.D.1983). The trial court's ruling is presumed correct and we will not seek reasons to reverse on appeal. *Lytle v. Morgan*, 270 N.W.2d 359, 360 (S.D.1978).

We find the evidence cited by Karras and all inferences therefrom insufficient to support a conspiracy; reasonable minds could not differ. We affirm on this issue.

### V.

At trial, Alpha asserted that Karras had maliciously damaged the restaurant upon vacating the premises. Under his lease with Cusulos, Karras was obligated to surrender the property in good condition and repair. Acknowledging a lack of privity of contract between Alpha and Karras, the trial court permitted Alpha's action for damages against Karras sounding in tort.

Karras moved for directed verdict against Alpha on this issue, arguing that he owed no duty to Alpha. The trial court denied his motion and submitted the issue to the jury. The jury awarded Alpha $1,255 in compensatory damages and $453.52 in interest. Karras appeals the trial court's denial of his motion.

Whether a duty exists is a question of law for the court to determine. *Hagen v. City of Sioux Falls*, 464 N.W.2d 396, 398 (S.D.1990); *Gilbert v. United National Bank*, 436 N.W.2d 23, 27 (S.D.1989). And in this instance we find no duty running from Karras to Alpha. Alpha was not a party to the Cusulos/Karras lease, nor was it an avowed third-party beneficiary. There was no privity of estate between Alpha and Karras supporting any duty founded upon common law real property principles. *Weeg v. Iowa Mutual Ins. Co.*, 82 S.D. 104, 141 N.W.2d 913 (1966), relied upon by Alpha, is inapposite. Alpha's remedy for the alleged property damage lies with its lessor, Time Out, Inc., under its lease agreement.

Since Karras owed no duty to Alpha with respect to the restaurant, the trial court should have granted Karras' motion for directed verdict on this issue. We reverse.

### VI.

The jury returned a verdict of $0 compensatory damages and $50,000 punitive damages against Alpha. The trial court excised the punitive damages because no compensatory damages were awarded. Karras argues the striking of the punitive damages is evidence that the court found an injustice had been done by the jury's verdict. He submits this injustice should be remedied by granting a new trial.

Because we reverse and remand this case for a new trial on other grounds, we deem it unnecessary to address this issue. However, we note that exemplary damages may not be awarded absent an award of compensatory damages. *In re Estate of Jahnel*, 428 N.W.2d 528, 532 (S.D.1988); *Speck v. Anderson*, 349 N.W.2d 49, 51 (S.D.1984); *Johnson v. Kirkwood, Inc.*, 306 N.W.2d 640, 643 (S.D.1981). The trial court's excise of the punitive damages was, therefore, in accordance with law. Punitive damages may again be considered on remand, if the evidence so warrants.

### VII.

In the first trial, the jury determined that Karras owned the name "Time Out" and that Karras' trademark registration was valid. At the close of Karras' case and at the close of all evidence, Time Out, Inc. moved for a directed verdict. Time Out, Inc. argues the trial court erred in not granting these motions because the evidence was undisputed that Time Out, Inc., through G & C Realty, first acquired the common law rights to the name "Time Out" and that Karras' trademark registration was invalid. Alpha moved for judgment notwithstanding the verdict on the same basis.

The trial court initially granted summary judgment to Time Out, Inc. after determin-

ing the trademark was fraudulently obtained and improperly granted. On the first appeal, we acknowledged that fraud generally concerns questions of fact, making it an inappropriate matter for summary judgment. *Time Out I*, 392 N.W.2d at 437. The jury on remand found, as fact, that Karras was the sole owner of the name and had properly registered his mark. There is evidence in the record to support such a finding.

The parties purchased the "Time Out" name from its original, common law owner. Karras testified he initiated the purchase of the business and then searched out another party to split the business with him. Notwithstanding business documents which identify G & C Realty as the sole purchaser of the "Time Out" name, the jury could have chosen to believe Karras' testimony and found that he was the original purchaser of the business name. Under these circumstances, the determination of the jury that Karras is the sole owner of the name "Time Out" is supported in the record. There was substantial evidence to sustain the action, and the trial court did not err in failing to direct a verdict for Time Out, Inc. or grant judgment n.o.v. for Alpha. We affirm on this issue.

We affirm in part, reverse in part, and remand for a new trial in accordance with this opinion.

MILLER, C.J., HENDERSON, J., and HERTZ, Circuit Court Judge, Acting as a Supreme Court Justice, concur.

SABERS, J. concurs in part and dissents in part.

AMUNDSON, J., not having been a member of the Court at the time this case was argued, did not participate.

SABERS, Justice (concurring in part and dissenting in part).

I concur in all respects except that I dissent on Issue V.

Alpha claimed that Karras damaged the restaurant before vacating the premises. Alpha proved its case as the jury awarded Alpha compensatory damages and interest. Alpha had a leasehold interest in the res-

taurant property and that is sufficient to sustain the damage award.

SDCL 20-9-1 provides in part:

Every person is responsible for injury to the person, *property*, or rights *of another* caused by his willful acts or caused by his want of ordinary care or skill[.] (Emphasis added.)

This statute clearly provides a duty and it would be error for *this* court to determine otherwise. This is not a matter of privity as correctly acknowledged by the trial court but incorrectly concluded by the majority opinion. This is a tort, not a contract matter. "A duty to use proper care may also arise from a contractual relationship and breach of the resulting duty may give rise to tort liability." *Limpert v. Bail*, 447 N.W.2d 48, 51 (S.D.1989) (*citing Friedhoff v. Engberg*, 82 S.D. 522, 527, 149 N.W.2d 759, 762 (1967)). "Liability in tort for breach of that duty may arise as the result of negligence during the performance of the contract, even if there has been no breach of contract." *Id.* (*citing Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 343 N.W.2d 334, 341 (N.D.1983)).

Very simply, Karras damaged Alpha's property and should be held responsible for it. Obviously, Karras is not obligated to pay twice, i.e, to Alpha and to the lessor, but this verdict is proper and should be affirmed, not reversed.